BURNETT ET AL. *v.* GRATTAN ET AL.

No. 83–264.   Argued March 26, 1984—Decided June 27, 1984

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, WHITE, BLACKMUN, and STEVENS, JJ., joined. POWELL, J., filed an opinion concurring in the judgment, *post,* p. 56. REHNQUIST, J., filed an opinion concurring in the judgment, in which BURGER, C. J., and O'CONNOR, J., joined, *post,* p. 56.

*Paul F. Strain,* Deputy Attorney General of Maryland, argued the cause for petitioners. With him on the briefs were *Stephen H. Sachs,* Attorney General, and *Diana Gribbon Motz, Christine Steiner,* and *Robert A. Zarnoch,* Assistant Attorneys General.

*Sheldon H. Laskin* argued the cause for respondents. With him on the brief were *Laura Metcoff Klaus* and *Joseph M. Sellers.**

JUSTICE MARSHALL delivered the opinion of the Court.

The question presented is whether a state law, establishing a procedure for administrative resolution of employment discrimination complaints, provides an appropriate statute of limitations for actions brought under the Reconstruction-Era Civil Rights Acts, 42 U. S. C. § 1981 *et seq.* We hold that it does not.

I

Respondents James Grattan and Adrienne Hedman were employees of Coppin State College, a predominantly Negro college in Maryland. Their primary responsibility was to recruit students of diverse ethnic backgrounds to attend the school. App. 34–39. Respondents received notice in June 1976 that their contracts would not be renewed because the college "was not satisfied with the recruitment efforts of the Minority Affairs office." *Id.,* at 34, 38. In response, respondents, who are white, filed complaints of racial discrimination with the federal Equal Employment Opportunity

---

*\*Neil R. Shortlidge* filed a brief for the League of Kansas Municipalities as *amicus curiae* urging reversal.

*Leon Friedman, Charles S. Sims,* and *Burt Neuborne* filed a brief for the American Civil Liberties Union as *amicus curiae* urging affirmance.

Commission. While those claims were pending, they filed suit in state court in February 1977, naming as defendants the petitioners in the present action—the president of the College, the vice president of student affairs, and the chairman and executive director of the board of trustees. In October 1981, on leave of the court,[1] respondents filed an amended complaint, specifically alleging that they were victims of racial discrimination, and, in Hedman's case, gender discrimination, in violation of 42 U. S. C. §§ 1981,[2] 1983,[3] 1985,[4] 1986,[5] and the Equal Protection Clause of the Fourteenth Amendment, and that their discharge also violated the First Amendment and various provisions of the Maryland Constitution. App. 11–33. Petitioners removed the action from state to federal court. Thereafter, they filed a motion

---

[1] Respondents' original state-court action sought a declaratory judgment that their dismissals were arbitrary and without basis in law or fact, and constituted a deprivation of property without due process and a denial of equal protection. App. 6–7. The state court sustained petitioners' supplemental demurrer on the ground that the facts set forth in the complaint did not state a case appropriate for declaratory relief, but granted leave to amend. *Id.*, at 11.

[2] Title 42 U. S. C. § 1981 guarantees the right to be free from racial discrimination in specific activities, such as making contracts and bringing suit.

[3] Title 42 U. S. C. § 1983 confers a private federal right of action for damages and injunctive relief against state actors who deprive any citizen or person within the jurisdiction of the United States of "rights, privileges, or immunities secured by the Constitution and laws." See, *e. g.*, *Monroe* v. *Pape*, 365 U. S. 167 (1961) (constitutional deprivations); *Maine* v. *Thiboutot*, 448 U. S. 1 (1980) (statutory violations).

[4] Title 42 U. S. C. § 1985(3) creates a private right of action for damages for injury or deprivation caused by a conspirator to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

[5] Title 42 U. S. C. § 1986 creates a right to recover damages "in an action on the case" brought within one year after the cause of action has accrued against every person who has knowledge of, and power to prevent, a § 1985 conspiracy, but neglects or refuses to act.

to dismiss on the ground that respondents' claims were barred by the applicable statute of limitations. *Id.*, at 39–40.

Because the federal statutes under which respondents sued do not themselves contain a statute of limitations, the District Court borrowed a limitations period from a state statute prohibiting discriminatory practices in employment. Md. Ann. Code, Art. 49B, § 9(a) (1979);[6] see App. to Pet. for Cert. 23, 34. The District Court identified a "commonality of purpose" between the federal rights asserted and the rights defined in the state statute, and concluded that it was reasonable to subject the federal claims to the 6-month statute of limitations on filing employment discrimination complaints with an administrative body, the Maryland Human Affairs Commission. *Id.*, at 34–36. Because respondents' complaint had been filed more than six months after their cause of action accrued, the District Court dismissed the suit as time-barred.

The Court of Appeals for the Fourth Circuit, relying on its previous decision in *McNutt* v. *Duke Precision Dental and Orthodontic Laboratories, Inc.*, 698 F. 2d 676 (1983), found the 6-month period selected by the District Court inappropriate for suits brought under the Civil Rights Acts because the state law "governed the limitation of administrative proceedings which were informal, investigatory and conciliatory in nature." 710 F. 2d 160, 162 (1983). The Court of Appeals applied Maryland's 3-year statute of limitations for all civil

---

[6] Maryland assures "all persons equal opportunity in receiving employment and in all labor management-union relations regardless of race, color, religion, ancestry or national origin, sex, age, marital status, or physical or mental handicap unrelated in nature and extent so as to reasonably preclude the performance of the employment." Md. Ann. Code, Art. 49B, § 14 (1979). Article 49B prohibits discrimination in public accommodations and in housing, as well as in employment. §§ 5, 8, 16, 20–22 (1979 and Supp. 1983).

actions for which the Code does not otherwise provide a limitations period. Md. Cts. & Jud. Proc. Code Ann. § 5–101 (1984).[7] Finding that Grattan's and Hedman's amended complaint stated claims that related back to the action originally filed in the Maryland court some eight months after their cause of action arose,[8] the Court of Appeals held that the action was not time-barred, and remanded to the District Court.

We granted certiorari to resolve confusion in the Circuits regarding reliance upon a state administrative statute of limitations in a federal civil rights suit.[9] 464 U. S. 981 (1983). We now affirm.

---

[7] "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Petitioners do not contest here that this is the appropriate state-law statute of limitations for federal civil rights actions if Art. 49B, § 9(a), does not apply.

[8] The District Court held that the First Amendment claim was governed by Maryland's 3-year statute of limitations, but that it, too, was time-barred because it did not relate back, under the analysis required by Federal Rule of Civil Procedure 15, to the action filed in state court. App. to Pet. for Cert. 37–38. That ruling was not appealed. 710 F. 2d, at 162. The Court of Appeals' holding that respondents' other claims relate back to the action filed in state court is not at issue in the present case.

[9] Several Circuits have adopted positions similar to that taken by the Court of Appeals in this case. See, e. g., Childers v. Independent School Dist. No. 1 of Bryan County, 676 F. 2d 1338, 1342–1343 (CA10 1982) (rejecting applicability of Oklahoma's Political Subdivision Tort Claims Act 120-day limitation on filing administrative claims to public employee's claim of discrimination infringing First Amendment rights, brought under 42 U. S. C. § 1983); Zuniga v. AMFAC Foods, Inc., 580 F. 2d 380, 384, n. 5 (CA10 1978) (rejecting Colorado's Anti-Discrimination Act 6-month period in § 1981 action because "limitations periods for state statutory nonjudicial proceedings are inapplicable to civil rights actions in courts of law"), overruled on other grounds, Garcia v. Wilson, 731 F. 2d 640 (CA10 1984) (en banc) (holding that all § 1983 claims in the Circuit will be characterized uniformly as actions for injuries to personal rights for statute of limitations purposes, rather than in terms of the specific facts generating a particular suit); Chambers v. Omaha Public School Dist., 536 F. 2d 222, 225–228 (CA8 1976) (rejecting applicability of Nebraska's Fair Employment Prac-

## II

The century-old Civil Rights Acts do not contain every rule of decision required to adjudicate claims asserted under them. In the absence of specific guidance, Congress has directed federal courts to follow a three-step process to borrow an appropriate rule. 42 U. S. C. § 1988.[10] First, courts are

tices Act 180-day administrative statute of limitations to public employee's action under 42 U. S. C. §§ 1981, 1983, alleging First and Fourteenth Amendment violations in nonrenewal of contract); *Mason* v. *Owens-Illinois, Inc.*, 517 F. 2d 520, 521–522 (CA6 1975) (rejecting applicability of Ohio's 1-year Civil Rights Act administrative statute of limitations to private employee's claim of racial discrimination in promotion and discharge, brought under 42 U. S. C. § 1981); *Garner* v. *Stephens*, 460 F. 2d 1144, 1147–1148, and n. 1 (CA6 1972) (Kentucky Civil Rights Commission's 90-day statute of limitations); *Waters* v. *Wisconsin Steel Works of Int'l Harvester Co.*, 427 F. 2d 476, 488–489 (CA7) (rejecting applicability of Illinois' 120-day Fair Employment Practices Act administrative claim statute of limitations to private employee's § 1981 action), cert. denied, 400 U. S. 911 (1970). But see *Warner* v. *Perrino*, 585 F. 2d 171, 173–175 (CA6 1978) (applying Ohio's 180-day fair housing law limitations period to § 1982 action); *Green* v. *Ten Eyck*, 572 F. 2d 1233, 1237–1238 (CA8 1978) (Missouri's 180-day fair housing law barred §§ 1981, 1982 claims, but not § 1983 claim against state officials); *Warren* v. *Norman Realty Co.*, 513 F. 2d 730, 733–735 (CA8) (applying Nebraska's Civil Rights Act 180-day limitation to housing discrimination claim filed under §§ 1981, 1982, where state law specifically creates a civil action for private litigants as alternative to administrative relief), cert. denied, 423 U. S. 855 (1975).

The First Circuit has upheld reliance upon administrative statutes of limitations. See, *e. g.*, *Burns* v. *Sullivan*, 619 F. 2d 99 (applying Massachusetts Commission Against Discrimination 6-month limitation on filing administrative complaints in public employee's action under 42 U. S. C. § 1983), cert. denied, 449 U. S. 893 (1980). The First Circuit has followed *Burns* in *Carter* v. *Supermarkets General Corp.*, 684 F. 2d 187, 189 (1982) (private employee, § 1981 action); *Holden* v. *Commission Against Discrimination of Massachusetts*, 671 F. 2d 30 (claim of racially motivated discharge brought under 42 U. S. C. §§ 1983, 1985), cert. denied, 459 U. S. 843 (1982); *Hussey* v. *Sullivan*, 651 F. 2d 74 (1981) *(per curiam)* (claim of political discrimination under 42 U. S. C. §§ 1983, 1985(3)).

[10] Title 42 U. S. C. § 1988 provides in pertinent part:

"The jurisdiction . . . conferred on the district courts by the [civil and criminal Civil Rights Titles] for the protection of all persons in the United

to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." *Ibid.* If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. *Ibid.* A third step asserts the predominance of the federal interest:. courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." *Ibid.*

## A

The task before the courts in the present case was to identify a limitations period governing respondents' claims under 42 U. S. C. §§ 1981, 1983, 1985, and 1986.[11] The Civil Rights Acts do not provide the rule. Only 42 U. S. C. § 1986 contains a statute of limitations.[12] Other sources of federal law

---

States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. . . ."

For discussion of the history of 42 U. S. C. § 1988 and its complementary role in the scheme of federal civil rights legislation, see *Moor* v. *County of Alameda*, 411 U. S. 693, 702, and n. 13, 703–706, and nn. 18–19 (1973).

[11] Neither the District Court, the Court of Appeals, nor the parties have suggested that the statute of limitations inquiry would vary depending on the particular federal civil rights statute under which a person claimed relief. That issue is not presented to us.

[12] Because our affirmance of the Court of Appeals' judgment reinstates respondents' claims (with the exception of the First Amendment claim, n. 8, *supra*), we have no occasion to discuss the District Court's conclusion that the explicit 1-year statute of limitations in § 1986 did not control that claim because the related § 1985 claim was time-barred by the state-law 6 months' limitations period.

are no more helpful. On several occasions, this Court has rejected arguments that a particular federal statute of limitations applied, *O'Sullivan* v. *Felix*, 233 U. S. 318, 324–325 (1914) (rejecting federal statute of limitations for suits for a penalty, because civil actions under Civil Rights Act are remedial), or has implicitly rejected linkage with other federal statutes, emphasizing the independence of the remedial scheme established by the Reconstruction-Era Acts. See, *e. g.*, *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 459–461 (1975) (§ 1981 and Title VII (Equal Employment Opportunity) of the Civil Rights Act of 1964 provide independent rights and remedies); *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409, 416–417, and n. 20 (1968) (enactment of Title VIII (Fair Housing) of the Civil Rights Act of 1968 "had no effect upon § 1982"). It is now settled that federal courts will turn to state law for statutes of limitations in actions brought under these civil rights statutes. See, *e. g.*, *Chardon* v. *Fumero Soto*, 462 U. S. 650, 655–656 (1983).

## B

We have described in a variety of ways the task of a court when determining which of a set of arguably relevant state statutes of limitations should govern a suit brought under the Civil Rights Acts. For example, in *Johnson* v. *Railway Express Agency, supra*, at 462, an action brought under 42 U. S. C. § 1981, we described the goal as that of identifying the "most appropriate" state statute of limitations. In *Board of Regents* v. *Tomanio*, 446 U. S. 478, 483–484 (1980), an action under § 1983, we suggested that the court should select "the state law of limitations governing an analogous cause of action." See also *Johnson* v. *Railway Express Agency, supra*, at 469 ("that [period of limitations] which the State would apply if the action had been brought in a state court") (MARSHALL, J., concurring in part and dissenting in part). We agree with the Court of Appeals that the District Court's selection of Art. 49B of the Maryland Code was

erroneous under this approach. The functional differences between the federal causes of action and the state administrative law make Art. 49B an inappropriate analog from which to borrow to effectuate Congress' purpose in enacting the Civil Rights Acts.

In the Civil Rights Acts, Congress established causes of action arising out of rights and duties under the Constitution and federal statutes. These causes of action exist independent of any other legal or administrative relief that may be available as a matter of federal or state law. They are judicially enforceable in the first instance. The statutes are characterized by broadly inclusive language. They do not limit who may bring suit, do not limit the cause of action to a circumscribed set of facts, nor do they preclude money damages or injunctive relief. An appropriate limitations period must be responsive to these characteristics of litigation under the federal statutes. A state law is not "appropriate" if it fails to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts.

Applying these criteria for disqualifying a particular state law, we begin with the observation that borrowing an administrative statute of limitations ignores the dominant characteristic of civil rights actions: they belong in court. *McDonald* v. *West Branch*, 466 U. S. 284, 290 (1984). Assuring the full availability of a judicial forum necessitates attention to the practicalities of litigation. Litigating a civil rights claim requires considerable preparation. An injured person must recognize the constitutional dimensions of his injury. He must obtain counsel, or prepare to proceed *pro se*. He must conduct enough investigation to draft pleadings that meet the requirements of federal rules;[13] he must also estab-

---

[13] Although the pleading and amendment of pleadings rules in federal court are to be liberally construed, the administration of justice is not well served by the filing of premature, hastily drawn complaints. The recent revision of Federal Rule of Civil Procedure 11 emphasizes that an attorney

lish the amount of his damages, prepare legal documents, pay a substantial filing fee or prepare additional papers to support a request to proceed *in forma pauperis*, and file and serve his complaint. At the same time, the litigant must look ahead to the responsibilities that immediately follow filing of a complaint. He must be prepared to withstand various responses, such as a motion to dismiss, as well as to undertake additional discovery.

The practical difficulties facing an aggrieved person who invokes administrative remedies are strikingly different. Maryland's scheme is modeled on Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.*, and is typical of statutes in some 30 States. See Pet. for Cert. 10, and n. 7. A person's sole responsibility under this scheme is to "make, sign and file with the Human Relations Commission . . . a complaint in writing under oath." Md. Ann. Code, Art. 49B, § 9(a) (1979). The complaint need contain no more than the name and address of the person or entity alleged to have committed the discriminatory act, "the particulars thereof," and "other information as may be required from time to time by the Commission." *Ibid.* Although the complainant is potentially liable for a malicious filing, § 12(b), he has no obligation to investigate his allegations more fully. The entire burden of investigating and developing the case rests on the Human Rights Commission, which is empowered to issue subpoenas, conduct hearings, and seek judicial enforcement of its orders. §§ 11–12.

When a legislature selects a statute of limitations to govern a particular cause of action, it takes into account the burdens borne by the parties to a suit of that sort. Article 49B,

---

or *pro se* litigant certifies that "to the best of his knowledge, information, and belief formed after reasonable inquiry [a complaint] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

§ 9(a), tells a person when he must act if he wishes to request the aid of the Human Rights Commission in resolving an employment discrimination dispute.. The time limit established by the Maryland Legislature reflects in part the minimal burden state law places on the administrative complainant, which does not correspond in any significant way to the substantial burden federal law places on a civil rights litigant.[14] Indeed, Maryland's administrative procedure acknowledges these different burdens.  Where a complainant has only six months to initiate a grievance, the Human Affairs Commission—which after receiving notice of the complaint essentially assumes the role of "litigant"—may engage in investigation and negotiations toward settlement for at least two years before bringing formal charges against an employer. Code of Maryland Regulations 14.03.01.01–14.03.01.03.A (1983).

A legislative definition of a statute of limitations also reflects a policy assessment of the state causes of action to which it applies.  *Occidental Life Insurance Co.* v. *EEOC*, 432 U. S. 355, 367 (1977) ("State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importa-

---

[14] It is true that we have "borrowed" a 6-month administrative statute of limitations in the labor context, *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983), but we do not find that decision relevant to the civil rights issue before us.  In *DelCostello*, we held that the limitations period fixed by § 10(b) of the National Labor Relations Act for filing unfair labor practice claims with the National Labor Relations Board offered the most analogous limitations period for suits alleging breaches of the collective-bargaining agreement.  The importance of uniformity in the labor law field, and "the realities of labor relations and litigation," *id.*, at 167, informed our decision *not* to adopt a state statute of limitations that would be at odds with the purpose of the substantive federal law.  Congress, for whatever reason, sees no need for national uniformity in all aspects of civil rights cases.  See *Robertson* v. *Wegmann*, 436 U. S. 584, 594, n. 11 (1978). Moreover, the state administrative statute here, unlike the federal statute we relied on in *DelCostello*, is not functionally related to Congress' policy enacted in the relevant substantive law.

tion of state law will not frustrate or interfere with the implementation of national policies"). For instance, the length of a limitations period will be influenced by the legislature's determination of the importance of the underlying state claims, the need for repose for potential defendants, considerations of judicial or administrative economy, and the relationship to other state policy goals. To the extent that particular state concerns are inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Acts, the resulting state statute of limitations may be inappropriate for civil rights claims.[15]

The divergence between the goals of the federal civil rights statutes and of the state employment discrimination administrative statute is clear in the present case. The goals of the federal statutes are compensation of persons whose civil rights have been violated, and prevention of the abuse of state power. *Board of Regents* v. *Tomanio*, 446 U. S., at 488; *Robertson* v. *Wegmann*, 436 U. S. 584, 590–591 (1978). That these are not the goals of the statute empowering Maryland's administrative agency to resolve employment discrimination complaints is apparent both because the remedial authority of the agency is limited,[16] and because the state

---

[15] To this degree the second and third steps of the § 1988 inquiry shade into each other. The step three inquiry—whether a state rule of decision is inconsistent with the Constitution or federal law—is not necessary to resolve this case, but must be made, for example, when a state legislature has enacted a statute of limitations specifically applicable to actions brought under one or all of the Reconstruction Civil Rights Acts. See, e. g., *Johnson* v. *Davis*, 582 F. 2d 1316 (CA4 1978) (rejecting Virginia's express 1-year statute of limitations for § 1983 actions as discriminating against federal cause of action). See also *Campbell* v. *Haverhill*, 155 U. S. 610, 615 (1895) (patent action) (state statute of limitations must operate uniformly on state and federal rights, and "must give a party a reasonable time to sue").

[16] If the Human Affairs Commission concludes that an employer has violated the statute, it has authority to issue a cease-and-desist order, which may include reinstatement or hiring, with or without backpay limited to a 2-year period, and other equitable relief. Md. Ann. Code, Art. 49B,

scheme does not create a private right of action.[17] The stated goal of the state administrative procedure is the prompt identification and resolution of employment disputes. The administrative scheme, including a short statute of limitations, encourages conciliation and private settlement through the agency's intervention in live disputes.

Petitioners urge the prompt assertion and resolution of public employee disputes in particular, noting that this important policy "is clearly mirrored in . . . an abbreviated period for the filing of claims of employment discrimination with the state fair employment practices agency," enacted in Maryland and most other States. Brief for Petitioners 30, and n. 19. That policy, keyed to a classification of plaintiffs, cannot pre-empt the broadly remedial purposes of the Civil Rights Acts, which make no distinction among persons who may look to the court to vindicate their federal constitutional rights. If the statute of limitations in Art. 49B is "abbreviated" precisely because it effectuates the narrower state goal, a federal court should look elsewhere in state law for an appropriate limitations period.

Similarly, the state petitioners argue that the short limitations period in Art. 49B should be applied here because it affords public officers "some reasonable protection from the seemingly endless stream of unfounded, and often stale, lawsuits brought against them." Brief for Petitioners 30. This contention undercuts rather than buttresses the case for applying the limitations period embodied in Art. 49B to federal civil rights actions. The statement suggests that the legisla-

---

§ 11(e) (1979). At the time of the District Court's decision, monetary damages were not available to public employees. § 7(b) (1979). Maryland has since amended the law. 1980 Md. Laws, ch. 568.

[17] Maryland's administrative procedure provides for judicial review on the record of a final administrative decision. Md. Ann. Code, Art. 49B, § 12 (Supp. 1983). The statute does not create a private right of action, nor provide for *de novo* judicial consideration of an employment discrimination complaint. § 12(a). These restrictions limit the state procedure in deterring employment discrimination.

tive choice of a restrictive 6-month limitations period reflects in part a judgment that factors such as minimizing the diversion of state officials' attention from their duties outweigh the interest in providing employees ready access to a forum to resolve valid claims. That policy is manifestly inconsistent with the central objective of the Reconstruction-Era civil rights statutes, which is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief. See *Mitchum* v. *Foster*, 407 U. S. 225, 239 (1972); *Griffin* v. *Breckenridge*, 403 U. S. 88, 97 (1971); *McNeese* v. *Board of Education*, 373 U. S. 668, 671–672 (1963); *Monroe* v. *Pape*, 365 U. S. 167, 173 (1961).[18]

## III

In sum, the Court of Appeals properly applied the tests established by our prior cases for determining whether a particular state statute of limitations should control a suit brought under the Civil Rights Acts. Both the practical differences between the administrative proceeding contemplated by the Maryland statute and a civil action in a federal court, and the divergence in the objectives of the state administrative procedure to resolve employment discrimination suits and a federal cause of action to vindicate constitutional rights, lead us to conclude that borrowing the limitations period from Maryland's Art. 49B was inappropriate. The judgment of the Court of Appeals is therefore

*Affirmed.*

---

[18] As the Court of Appeals for the Second Circuit has noted, "[i]t would be anomalous for a federal court to apply a state policy restricting remedies against public officials to a federal statute that is designed to augment remedies against those officials, especially a federal statute that affords remedies for the protection of constitutional rights." *Pauk* v. *Board of Trustees of City University of New York*, 654 F. 2d 856, 862 (1981) (rejecting applicability of 1-year and 90-day limitation period in N. Y. Gen. Mun. Law § 50–i (McKinney Supp. 1983–1984) for actions against city or its employees to action brought under § 1983), cert. denied, 455 U. S. 1000 (1982).

JUSTICE POWELL, concurring in the judgment.

The question is what is the appropriate statute of limitations applicable to this Maryland employment discrimination case under 42 U. S. C. §§ 1981, 1983, and 1985(3). The Court of Appeals in *McNutt* v. *Duke Precision Dental Orthodontic Laboratories, Inc.*, 698 F. 2d 676 (CA4 1983), and again in this case, held that in all claims for which no other limitations period is specifically provided, Maryland's general 3-year period of limitations is the most appropriate for federal courts to apply in actions under the Reconstruction Civil Rights Acts. The Court of Appeals rejected petitioners' reliance on Maryland's 6-month period of limitations applicable to state administrative complaints of employment discrimination. As petitioners have adduced no persuasive reason to doubt that the Court of Appeals correctly decided this question, I agree with the judgment of the Court.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, concurring in the judgment.

I concur in the judgment of the Court, agreeing with the Court of Appeals that in these circumstances the statute of limitations imposed on administrative complaints filed under Md. Ann. Code, Art. 49B, § 9(a) (1979), is not the most appropriate statute of limitations to be applied in this case. I write separately because I cannot agree with the standard by which the Court purports to reach this result. In my view, the search for the most appropriate statute of limitations should begin with determining the intent of the state legislature in enacting a particular statute of limitations.

The task before us is straightforward: we are to examine Maryland law to determine what is the most appropriate statute of limitations to apply to respondents' lawsuit. The Court is presented with this task because Congress has seen fit not to prescribe a specific statute of limitations to govern actions under most of the federal civil rights statutes, instead directing courts to apply state law if "not inconsistent" with

federal law. See 42 U. S. C. § 1988; cf. § 1986 (setting a 1-year statute of limitations). The Court addresses the question before us by assuming that certain functional differences may exist between claims asserted under the federal civil rights laws and claims asserted under state law. Under this approach, the appropriateness of a particular state statute of limitations for purposes of borrowing in a federal civil·rights action depends on whether the state law reflects the "practicalities" that attend litigation under the federal civil rights statutes and embodies policies "analogous" to those of the federal civil rights statutes. But the test prescribed by the Court is consistent neither in principle nor in practice with our prior decisions.

I part ways with the majority, first of all, with its view of the "practicalities" of litigation that so trouble the Court. These seeming difficulties are hardly unique to respondents' claims or any other garden-variety federal civil rights claim. The Court apparently believes that a person asserting a federal civil rights claim must undertake an involved investigation preparatory to filing suit. See *ante*, at 50–51. The basis for this assumption is not clear. The Federal Rules require nothing more than a plain statement of the grounds for relief, Fed. Rule Civ. Proc. 8(a), while the Rules of discovery that enable a party to develop his case fully prior to trial come into play after suit has been filed. To be sure, at least a modicum of investigation should be necessary before initiating suit: the amount will depend not on the fact that a federal civil rights claim is being asserted, but on the particular facts that give rise to a claim. But there is nothing inherent in a claim asserted under § 1981, § 1983, or § 1985, in light of modern pleading rules, that makes such a claim invariably more difficult to investigate than a claim asserted under state law. Cf. *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 464 (1975).

It is true that a longer statute of limitations will give a person more time to reflect and to recognize that he may have some means of relief. But that common-sense truism hardly

qualifies as a "practicality" that should ordinarily affect a court's analysis whether to borrow a particular state statute of limitations. Were it otherwise, a federal court should always prefer a longer statute of limitations over an alternative, but shorter, period, a type of approach we have rejected before. Cf. *Robertson* v. *Wegmann*, 436 U. S. 584 (1978). While the "practicalities" of preparing a case may have some relevance to the question whether a state statute of limitations should be applied, see *ante*, at 53, the Court's focus on the "practicalities" of filing a lawsuit alleging a federal civil rights claim do not illuminate any convincing reason why the limitations period contained in Md. Ann. Code, Art. 49B, § 9(a) (1979), is inconsistent with federal law.

The second part of the Court's proposed test for determining whether to apply a particular state statute of limitations is whether the state policies underlying the statute of limitations reflect policies "analogous"—whatever that may mean—to federal civil rights claims. From the application of that principle to this case, the Court seems to believe that the basic purpose underlying the federal civil rights statutes, vindication of a violation of a federal right, necessitates a statute of limitations that is both general in the remedies it encompasses and nondiscriminatory between the federal plaintiffs bringing suit. The logical result of this approach is that a federal court should always prefer a general statute of limitations to any specific state statute of limitations directed at a particular type of claim or involving a particular party as plaintiff or defendant. Thus, a general catchall statute of limitations, or one covering all forms of invasions of personal rights, would be the appropriate statute of limitations to govern nearly all federal civil rights actions.

This approach, of course, means that any federal civil rights action grounded on a contract claim could avoid the statute of limitations applying to contract claims, or that a claim against a state-employed doctor, though alleging only

malpractice, might benefit from a longer statute of limitations than ordinarily applying to medical malpractice actions. This desire for uniform treatment of federal civil rights claims is at odds with the fact that Congress has seen no need to establish a uniform approach in federal civil rights actions. *Board of Regents* v. *Tomanio*, 446 U. S. 478, 489 (1980); *Robertson* v. *Wegmann*, 436 U. S., at 593, n. 11. More significantly, it fails to recognize that a state statute of limitations can still be consistent with federal law notwithstanding the fact that the particular statute of limitations applies only to a particular class of claims cognizable under a federal civil rights statute, or involves a particular class of parties.

On several occasions the Court has addressed the issue of whether a limitations period is inconsistent with the federal policy embodied in the civil rights statutes. In *Robertson*, for example, we indicated that the dual policies of preventing the abuse of state power and compensating victims for violations of federal rights were the yardsticks by which any state limitations period must be measured. *Id.*, at 591. We developed the concept of inconsistency further in *Tomanio*, *supra*, where we observed that to gauge consistency, "the state and federal policies which the respective legislatures sought to foster must be identified and compared." *Id.*, at 487. We went on to affirm in that case that statutes of limitations have "long been respected as fundamental to a well-ordered judicial system," *ibid.*, and to state that "in general, state policies of repose cannot be said to be disfavored in federal law," *id.*, at 488. Finally, in *Johnson* v. *Railway Express Agency*, *supra*, the Court addressed the question of inconsistency to determine whether an otherwise applicable state 1-year statute of limitations should be tolled pending federal administrative proceedings. We rejected the petitioner's contention in *Johnson* that state rules for tolling were inconsistent with federal law, since they forced him to bring a § 1981 claim during the pendency of federal agency

proceedings. We noted that there was not "anything pecu-
liar to a federal civil rights action that would justify special
reluctance in applying state law." *Id.*, at 464.

The Court, of course, purports to measure the statute of
limitations in this case against the relevant federal policies
forming the basis of respondents' cause of action. See *ante*,
at 53–55. Under the Court's reasoning, however, the poli-
cies of repose and prevention of stale claims that generally
underlie limitations statutes will always be of marginal rele-
vance to compensating victims of violations of federal rights.
Thus, the approach adopted by the Court utterly disregards
our earlier observation, also in *Robertson*, that "[a] state
statute cannot be considered 'inconsistent' with federal law
merely because the statute causes the plaintiff to lose the
litigation." 436 U. S., at 593.

Congress, moreover, has instructed federal courts to refer
to state statutes when federal law does not provide a rule of
decision for actions brought under one of the civil rights stat-
utes. See 42 U. S. C. § 1988. This admonition is more than
a mere "technical obstacle to be circumvented if possible."
*Tomanio, supra*, at 484. Only if state law is "inconsistent
with the Constitution and laws of the United States," 42
U. S. C. § 1988, are federal courts free to disregard other-
wise applicable state statutes of limitations. As our decision
in *Tomanio* made clear, the intent of the state legislature in
enacting a particular limitations statute is extremely relevant
to determining whether the applicable state law is inconsist-
ent with federal law. The conclusion that I reach is that if
the legislature has indicated that a particular statute of limi-
tations should apply to a claim, that statute is prima facie the
most appropriate statute of limitations to apply to a federal
civil rights action.

Congress, however, has prescribed limits to this reliance
on legislative intent in 42 U. S. C. § 1988. Plainly, if the
state statute of limitations discriminates against federal
claims, such that a federal claim would be time-barred, while

an equivalent state claim would not, then the state law is inconsistent with federal law. Alternatively, if the state statute of limitations fails to afford a reasonable time to the federal claimant, then state legislative intent can also be disregarded. Exactly what constitutes a reasonable time, however, is not to be determined *a priori*. The willingness of Congress to impose a 1-year limitations period in 42 U. S. C. § 1986 demonstrates that at least a 1-year period is reasonable. In another context we have been willing to impose a 6-month limitations period on a federal claimant, in circumstances where the "practicalities" of litigation seem materially the same as in this case. *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983). Even shorter periods of limitation might be permissible, if the state interest in repose is strong and the nature of the claim is such that the magnitude of the harm is readily ascertainable in a short period.

I agree with the court below that it is unlikely that the Maryland Legislature intended for the 6-month statute of limitations embodied in Md. Ann. Code, Art. 49B, § 9(a) (1979), to apply to the federal civil rights claims asserted in this case. Unlike the Court, however, I do not believe that the "practicalities" of litigation necessarily mean that a 6-month limitations period is an unreasonable time in which to bring a federal cause of action. Perhaps if the legislative intent had been clear, borrowing the administrative statute of limitations would have been consistent with the underlying federal policies embodied in these civil rights statutes. On the other hand, the differences between the two types of claims, one judicial, the other administrative, reinforce the conclusion that the Maryland Legislature did not intend that Art. 49B, § 9(a), apply to federal civil rights claims. Thus, to this limited extent, the "practicalities" of litigation bear on the question whether the state legislature intended for the statute to apply to this federal claim.

In sum, I believe that the correct inquiry is to examine the intent of the state legislature in enacting a statute of limita-

tions.   If that inquiry indicates that the legislature would have intended that statute to apply to the particular claim before the court, then the court must apply that limitations period, unless the statute discriminates against the federal claim or does not afford a reasonable amount of time in which to bring the claim.   Since it appears that the legislature did not intend that Md. Ann. Code, Art. 49B, apply to respondents' claims, I would affirm the decision of the Court of Appeals.