**Shirley BELL, Plaintiff,**

v.

**Carolyn C. BUSSE, Defendant.**

**Civ. A. No. C–1–82–568.**

United States District Court,
S.D. Ohio, W.D.

April 24, 1986.

Michael J. Mooney, Cincinnati, Ohio, for plaintiff.

John G. Cobey, Cohen, Todd, Kite & Stanford, Cincinnati, Ohio, for defendant.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge.

Plaintiff filed this suit in June 1982. Her claims were based on the Civil Rights Act of 1866, 42 U.S.C. § 1981 and § 1982, and the Fair Housing Act of 1968, 42 U.S.C. § 3601, *et seq.* Plaintiff, who is black, alleged that defendant refused to rent to her because of her race (doc. 1). Defendant later filed a motion pursuant to Fed.R. Civ.P. 12(b)(6) to dismiss the action for failure to state a claim upon which relief could be granted (doc. 9). The motion to dismiss was based on defendant's assertion that the rental property in question was a single family home, a type of dwelling excluded from the coverage of the Fair Housing Act of 1968, 42 U.S.C. § 3603(b). In August 1983, this Court granted plaintiff's motion for summary judgment on the issue of liability for discrimination (doc. 20), in part because defendant had failed to attend two scheduled depositions (November 24, 1982 and April 12, 1983) and had failed to respond to plaintiff's request for admissions. A jury trial on the issue of damages was scheduled for January 5, 1984.

Plaintiff then filed a motion requesting this Court to order a psychological examination of the defendant, pursuant to Fed.R. Civ.P. 35(a) (doc. 24). Although the order was granted (doc. 26), defendant did not appear at the examination and this Court ordered that defendant show cause why she should not be held in contempt of court (doc. 30). The defendant finally did appear before this Court at the show cause hearing. As evidenced by the transcripts of that proceeding, defendant's demeanor was somewhat unusual (doc. 32). The Court found defendant in contempt but reserved ruling on sanctions until defendant underwent psychiatric examination (doc. 31).

After receipt of the psychological exam, this Court vacated its finding that defendant was in contempt of court (doc. 34).

Subsequently, a motion to appoint a guardian *ad litem* for defendant was filed (doc. 39), and an order appointing a guardian *ad litem* was issued (doc. 40).

Now defendant, through her recently appointed guardian *ad litem,* urges this Court to vacate the summary judgment earlier granted plaintiff pursuant to Fed.R. Civ.P. 60. In short, defendant's theory for vacating the summary judgment is based on the contention that housing discrimination is an intentional tort, and that defendant lacked the requisite intent to commit an intentional tort because she was insane at the time of the act in question. Normally, this Court is hesitant to reopen a question that has been duly considered and decided, but we believe that the recently presented information and newly raised issues briefed by the parties require a re-examination of our prior ruling.

As an initial matter, we note that both defendant (docs. 9 and 43) and plaintiff (doc. 42, n. 1) agree that the Fair Housing Act is not applicable in this instance because defendant's rental property, which contains no more than four rental units, falls outside the scope of the Fair Housing Act. *See* 42 U.S.C. § 3603(b)(2). Accordingly, to the extent that summary judgment was premised on a Fair Housing Act claim, it is vacated.

Next, it appears to be a question of first impression whether insanity can preclude a defendant from forming the requisite intent to discriminate unlawfully under section 1982. Defendant has argued that unlawful discrimination under sections 1981 and 1982 is an intentional tort, and that since insanity can be a defense to some intentional torts, it should also constitute a defense to a charge of unlawful discrimination. Arguably, this Court must therefore determine whether housing discrimination is an intentional tort, and then determine whether insanity could thereby serve as a defense.

## I.

▮ Plaintiff brings this action under both 42 U.S.C. § 1981[1] and § 1982.[2] Because these sections were originally clauses of section 1 of the Civil Rights Act of 1866, the two provisions may be construed *in pari materia*. *Taylor v. Jones*, 495 F.Supp. 1285, 1290 (D.C.Ark.1980). "[I]t [is] natural for all of the civil rights legislation of the same jurisdiction to be treated as *in pari materia*." 3 Sutherland Statutory Construction, 393 (C. Sands ed. 1974). As Justice Stevens has said, "It would be most incongruous to give these two statutes a fundamentally different construction." *Runyon v. McCrary*, 427 U.S. 160, 190, 96 S.Ct. 2586, 2604, 49 L.Ed.2d 415 (1976) (Stevens, J., concurring).

▮ Defendant argues that the unlawful act of housing discrimination should be characterized as a tort.[3] We find defendant's position to be extremely plausible, especially in view of the fact that discrimination claims have been so characterized by the Supreme Court in a variety of contexts. For example, in *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1984), the Court discussed the Seventh Amendment right of a plaintiff to a jury trial in a suit brought under the Fair Housing Act, 42 U.S.C. § 3604(a). The Court determined that a suit for damages brought under the act was a suit to enforce *legal* rather than *equitable* rights. The Court held:

> A damages action brought under the statute sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law.[10]

[10] For example, the Court of Appeals recognized that Title VIII could be viewed as an extension of the common-law duty of innkeepers not to refuse temporary lodging to a traveler without justification, a duty enforceable in a damages action triable to a jury, to those who rent apartments on a long-term basis ... An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress. Indeed the contours of the latter tort are still developing, and it has been suggested that "under the logic of the common law of insult and indignity, racial discrimination might be treated as a dignitary tort." L. Gregory & H. Kalven, Cases and Materials on Torts (2d ed. 1969).

*Curtis v. Loether, supra* 415 U.S. at 195–96 and n. 10, 94 S.Ct. at 1009 and n. 10.

In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Court looked to common law tort rules to assess damages in a procedural due process case. The Court reaffirmed that 42 U.S.C. § 1983[4] " 'creates a species of tort liability'

> 'First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. A third step asserts the predominance of the federal interest courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." '

Id. 105 S.Ct. at 1942–43, *quoting Burnett v. Grattan*, 468 U.S. 42, ——, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 and 42 U.S.C. § 1988. We find that, based on this criteria, defendant is correct in referring us to state common law to determine whether insanity can preclude the formation of the requisite intent to violate §§ 1981 and 1982.

---

1. Section 1981 states:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

2. Section 1982 reads:

   All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

3. We are permitted to look to state common law to fill in the interstices of the federal civil rights acts. *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). According to the Supreme Court, our analysis in so doing must follow a three-step process.

4. Section 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United

in favor of persons who are deprived of 'rights, privileges, or immunities secured to them by the constitution.'" *Id.* at 253, 98 S.Ct. at 1047 *quoting Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). Finally, in *Wilson v. Garcia*, — U.S. —, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Court held that discrimination claims should be characterized as personal injury actions for the purpose of determining the applicable statute of limitations in a section 1981 action.

Defendant argues that since discriminatory intent must be proved before plaintiff can prevail on her claim, *see General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), housing discrimination is similar to the intentional tort of defamation, as both require proof of malice. Defendant contends that defendant's insanity should negate any finding of malice. *See Phillips' Committee v. Wards' Adm'r*, 241 Ky. 25, 43 S.W.2d 331, 334 (1931).

Plaintiff counters that in the instant case, even if malice is required, only legal malice must be proved. She defines legal malice as that state of mind under which a person acts with "disregard and a lack of consideration for the just rights of others." *See Trainor v. Deters*, 22 Ohio App.2d 135, 259 N.E.2d 131, 134 (Hamilton County Ct. App.1969, *citing* 35 Ohio Jur.2d 142, Malicious Prosecution § 22. Moreover, plaintiff argues that failure to prove the element of discriminatory intent should not foreclose any recovery for compensatory damages, as under the tort law of Ohio, defendant's malicious intent *vel non* has no effect on plaintiff's right to obtain compensatory damages.

> [I]n no case does the recovery of compensatory damages depend on intent or motive; one who invades the rights of another is liable for the actual damages sustained, notwithstanding that the act

was not done maliciously, or that it was done with honest purpose.

30 Ohio Jur.3d 128–29, Damages § 117.

We find the general rule to be that insanity is not a defense to tort actions, regardless of whether the action involves an intentional or negligent tort. *See* Restatement (Second) of Torts § 283B; Prosser, Law of Torts (5th Ed.1984); Curran, *Tort Liability of the Mentally Ill and Mentally Deficient*, 21 Ohio St.L.J. 52 (1960).

The Restatement (Second) of Torts lists several reasons for this view.

1. The difficulty of drawing any satisfactory line between mental deficiency and those variations of temperament, intellect, and emotional balance which cannot, as a practical matter, be taken into account in imposing liability for damage done.

2. The unsatisfactory character of the evidence of mental deficiency in many cases, together with the ease with which it can be feigned, the difficulties which the triers of fact must encounter in determining its existence, nature, degree, and effect; and some fear of introducing into the law of torts the confusion which has surrounded such a defense in the criminal law. Although this factor may be of decreasing importance with the continued development of medical and psychiatric science, it remains at the present time a major obstacle to any allowance for mental deficiency.

3. The feeling that if mental defectives are to live in the world they should pay for the damage they do, and that it is better that their wealth, if any, should be used to compensate innocent victims than that it should remain in their hands.

4. The belief that their liability will mean that those who have charge of them or their estates will be stimulated to look after them, keep them in order, and see that they do not do harm.

---

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitu-

tion and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding to redress.

Denial of insanity defense in tort actions has been criticized in recent years. *See, e.g., Tort Responsibility of Mentally Disabled Persons,* 1981 A.B.Found.Res.J. 1079. Nevertheless, it appears to remain the prevailing view. *See,* Prosser, *supra.*

Defendant's comparison of housing discrimination and defamation is appealing. This comparison was made in depth in *Curtis v. Loether, supra.* However, we are reluctant to make such a specific characterization of housing discrimination. By equating housing discrimination with defamation we would necessarily exclude a broad range of plausible analogies, which might be instructive in other contexts.

■ It is sufficient for our purposes, therefore, to hold simply that insanity is not a defense to a suit based on a claim of housing discrimination brought under Sections 1981 and 1982. Accordingly, defendant's motion to vacate summary judgment for lack of requisite intent is denied. Trial on the issue of damages is scheduled for May 19, 1986 at 9:30 a.m. The final pretrial conference will be held May 9, 1986 at 3:00 p.m.

SO ORDERED.