William A. FERNER, Plaintiff,

v.

The VILLAGE OF SHEFFIELD, et al., Defendants.

Civ. A. No. C85–2928.

United States District Court,
N.D. Ohio, E.D.

March 20, 1987.

J. Michael Murry, Lorraine R. Baumgardner, Berkman, Gordon, Murray & Palda, Cleveland, Ohio, for plaintiff.

Thomas A. Dugan, Cleveland, Ohio, Daniel G. Wightman, Smith & Smith, Avon Lake, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

By its Order of February 13, 1986, this Court ruled that William A. Ferner's claims accruing before October 2, 1984, are untimely, but that free speech claims accruing since that date would not be time-barred if Ferner proves a "continuing violation". Pursuant to this Court's Order at the pretrial conference of November 3, 1986, briefs were submitted by both parties concerning the effect of Ferner's "continuing violation" theory on the proof of damages. Upon reconsideration, this Court holds that Ferner's allegations of a "continuing violation" permit him to establish his free speech claims accruing before October 2, 1984.

### I.

Ferner's action arises from events beginning on December 24, 1983. On or about that date, two citizens of Sheffield Village allegedly visited Ferner at his home to inquire about potential remedies against harassment by Sheffield Village police officers. Ferner, an off-duty police officer, explained that a complaint could be filed by contacting the police station. After subsequent complaints were lodged, Ferner was dispatched on December 28th to take the statements of the persons he had previously advised. He avers that at that time, he informed the citizens that they could seek counsel from the American Civil Liberties Union ("ACLU") concerning potential violations of their constitutional rights by the Sheffield police and that they had the right to communicate their complaints to the media. Both statements allegedly were in response to inquiries and comments of the complainants.

On January 30, 1984, Sheffield Village Police Chief Andrew P. Dziak allegedly

suspended Ferner for an indefinite period of time solely because of his statements concerning the complainants' rights to contact the ACLU and the press. On February 3, 1984, Mayor Lenin Pando affirmed the indefinite suspension. That punitive measure was reduced to a 45–day suspension without pay by the Council of the Village of Sheffield after a hearing held on February 13 and 21, 1984. Although Ferner has subsequently been reinstated to the police force, he alleges that his working hours have been "drastically reduced" solely because of his statements to the complainants on December 28, 1983.

In this action filed on October 2, 1985, Ferner alleged two causes of action pursuant to 42 U.S.C. § 1983 (1982) ("§ 1983"). He claimed that his employment by Sheffield Village has been adversely affected because he exercised his free speech rights, violating the First and Fourteenth Amendments to the United States Constitution. In its Order of December 11, 1985, this Court instructed Ferner to explain why this § 1983 claim is not time-barred, since the recent decision of *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986), held that § 1983 claims brought in the courts of Ohio are subject to a one-year statute of limitations. In its response to that Order, Ferner argued that claims arising within one year of the filing of the complaint are not time-barred, since he can establish that his First Amendment rights continued to be violated by a reduction of his work hours. The Court agreed that claims occurring during that one-year period preceding the filing of the complaint are timely, provided that Ferner's proof establishes a "continuing violation." It ruled that claims accruing before October 2, 1984, are time-barred, while claims accruing after that time could not be dismissed as time-barred upon the allegations of the complaint. The Court dismissed Ferner's § 1983 claim which asserted that his indefinite suspension constituted a deprivation of his property right in his employment without due process in violation of the Fourteenth Amendment, since a suspension occurred prior to the year preceding the fil-

ing of the complaint and since Ferner did not allege that this claim could be construed as a continuing violation.

## II.

This Court instructed the parties to file briefs regarding the propriety of recovery for damages caused by conduct outside of the one-year limitations period, discussing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). *Havens* was a suit brought pursuant to § 804 of the Fair Housing Act of 1968 ("the Fair Housing Act"), 42 U.S.C. § 3604 (1982) ("§ 804"), alleging that defendants had engaged in unlawful "racial steering" practices. At issue was whether plaintiffs' claims were barred by the 180–day statute of limitations created by § 812(a) of the Fair Housing Act, 42 U.S.C. § 3612(a) (1982) ("§ 812"). Four of the five incidents giving rise to the complaint had occurred more than 180 days before the filing of the complaint. *Id.* at 380, 102 S.Ct. at 1125.

The Court of Appeals in *Havens* held that because the one claim fell within the limitations period, a "continuing violation" theory prevented the other claims from being time-barred. The Supreme Court agreed "that for purposes of § 812(a), a 'continuing violation' of the Fair Housing Act should be treated differently from one discrete act of discrimination." *Id.* It continued:

> Statutes of limitations such as that contained in § 812(a) are intended to keep stale claims out of the courts. See *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, [65 S.Ct. 1137, 1142, 89 L.Ed. 1628] (1945). Where the challenged violation is a continuing one, the staleness concern disappears. Petitioners' wooden application of § 812(a), which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act, see *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 417, [88 S.Ct. 2186, 2191, 20 L.Ed.2d 1189] (1968). Cf. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. [385] 398 [102 S.Ct. 1127, 1135, 71 L.Ed.2d 234].... [W]e therefore con-

clude that where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice.

*Id.* at 380–81, 102 S.Ct. at 1125 (footnote omitted).

The Supreme Court applied this principle to the claims that did not fall within the 180–day limitations period, concluding that those alleging a continuing violation were not time-barred.

Willis and Coleman have alleged that petitioners' continuing pattern, practice, and policy of unlawful racial steering has deprived them of the benefits of interracial association arising from living in an integrated neighborhood. Plainly the claims, as currently alleged, are based not solely on isolated incidents involving the two respondents, but a continuing violation manifested in a number of incidents—including at least one (involving Coles) that is asserted to have occurred within the 180–day period. HOME, too, claims injury to its counseling and referral services not only from the incidents involving Coleman and Willis, but also from a continuing policy and practice of unlawful racial steering that extends through the last alleged incident.

*Id.* at 381, 102 S.Ct. at 1125. However, the Court ruled that separate claims of receiving false information in violation of § 804(d) were time-barred, since they were not part of the steering activities which constituted the continuing violation. *Id.*

This Court's understanding that *Havens* permits damages for conduct occurring outside the limitations period, so long as such conduct is part of a continuing violation with one event occurring within the limitations period, is supported by *Heights Community Congress v. Hilltop Realty, Inc.*, 629 F.Supp. 1232 (N.D.Ohio 1983), *aff'd*, 774 F.2d 135 (6th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1206, 89 L.Ed.2d 318 (1986). This case also involved allegations of racial steering, in violation of § 804(a) of the Fair Housing Act. Again, the court was faced with alleged incidents of steering falling outside of the limitations period. It held:

Applying *Havens*, 455 U.S. at 380, 102 S.Ct. at 1125, the court treats plaintiffs' claim as one which charges separate acts of racial steering by Hilltop agents which comprise "an unlawful practice that continues into the limitations period." Accordingly, those alleged violations that occurred prior to 180 days of the filing of this suit will not be time barred if plaintiffs can show that the alleged incidents violated the Fair Housing Act and constituted an unlawful practice which continued into the 180–day limitations period.

629 F.Supp. at 1251. *Cf. Taylor v. Home Insurance Co.*, 777 F.2d 849, 856–57 (4th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986) (applying *Havens* reasoning to Age Discrimination in Employment Act claim).

In *Sevako v. Anchor Motor Freight, Inc.*, 792 F.2d 570 (6th Cir.1986), the Sixth Circuit considered whether "hybrid" lack of fair representation/breach of contract claims under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982) ("§ 301") were barred by the applicable six-month limitations period selected for § 301 claims in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Sixth Circuit recognized the "continuing violation" theory, but the court applied that doctrine so that each time a violation occurred, a new cause of action accrued. *Sevako*, 792 F.2d at 575. As a result, the court held that alleged violations of § 301 occurring beyond the six-month limitations period were time-barred. *Id.*

Obviously, *Havens* and *Sevako* appear to be irreconcilable decisions. They can be understood, however, by considering policies animating enforcement of the labor and civil rights statutes and the implications that these policies have for their statutes of limitations. In *Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), the Supreme Court rejected the application of a six-month state administra-

tive statute of limitations to a federal civil rights claim.[1] The Court noted that it had "borrowed" a six-month limitations period from federal law for § 301 claims in *Del-Costello*, explaining that "[t]he importance of uniformity in the labor law field, and 'the realities of labor relations and litigation' ... informed our decision *not* to adopt a state statute of limitations that would be at odds with the purpose of the substantive federal law." *Burnett*, 468 U.S. at 52 n. 14, 104 S.Ct. at 2930 n. 14. In contrast, the Court stated that the goals of the civil rights statutes are "compensation of persons whose civil rights have been violated, and prevention of the abuse of state power." *Id.* at 53, 104 S.Ct. at 2931.

 It is indisputable that one of the primary reasons why the Supreme Court selected the six-month period for § 301 claims was to encourage "the relatively rapid final resolution of labor disputes favored by federal law." *DelCostello*, 462 U.S. at 167, 103 S.Ct. at 2292. This goal, along with the emphasis placed upon the policy of uniformity in the field of labor law, counsels against the application of a *Havens*-type of continuing violation theory in § 301 actions. Uniformity and rapid finality would be defeated by permitting employees to seek damages for violations occurring outside of the six-month period. On the other hand, these policies do not assume the same importance in enforcement of the civil right statutes. While the Supreme Court has determined that uniformity in the limitations period for all § 1983 claims brought within the same state is desirable, it has not required national uniformity. *Wilson*, 471 U.S. at 275, 105 S.Ct. at 1947. Repose has concededly been a goal, *id.* at 1944–45, but rapid final resolution has never been a policy for limiting federal civil rights claims. Instead, the Court has recognized that "[t]he high purposes of this unique remedy make it appropriate to accord [§ 1983] 'a sweep as broad as its language.'" *Id.* at 1945. The important policies supporting recovery on claims

under § 1983 are more like those animating the Fair Housing Act than the labor laws. Accordingly, *Havens*, rather than *Sevako*, is controlling in this case, and Ferner will be permitted to recover for damages occurring as part of a continuing free speech violation with at least one incident within the one-year limitations period, provided that such a continuing violation is proved.

 Ferner's entire First Amendment claim, then, is restored at this time. Despite his statement that such a holding would require that his due process claim also be restored, however, that claim remains dismissed. A due process claim based upon his suspension is analytically distinct from his First Amendment claim, even if his suspension were motivated by his exercise of his right of free speech. This claim is time-barred, since it occurred more than one year prior to the filing of the complaint and is not part of the continuing violation. *See Havens*, 455 U.S. at 381, 102 S.Ct. at 1125.

IT IS SO ORDERED.

---

1. The substance of this decision of the Supreme Court has been undercut by its subsequent decision of *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which held that a

state's statute of limitations for personal injury actions is applicable in all § 1983 actions brought in that state.