**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FAIR WOODS HOMEOWNERS
ASSOCIATION,
<u>Plaintiff-Appellant,</u>

v.

FEDERICO F. PENA, SECRETARY,
DEPARTMENT OF TRANSPORTATION,
Secretary, in his official capacity as
Secretary of the U.S. Department of

No. 95-1155

Transportation; RODNEY E. SLATER,
in his official capacity as
Administrator of the Federal
Highway Administration; DAVID R.
GEHR, in his official capacity as
Commissioner of the Virginia
Department of Transportation,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-94-1297)

Argued: September 27, 1995

Decided: January 3, 1996

Before MURNAGHAN and WILKINSON, Circuit Judges, and
BEATY, United States District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Andrea Carol Ferster, Washington, D.C., for Appellant. Robert Joseph Black, UNITED STATES DEPARTMENT OF TRANSPORTATION, Washington, D.C.; Mark Steven Paullin, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Helen F. Fahey, United States Attorney, Jeri Kaylene Somers, Assistant United States Attorney, Alexandria, Virginia; James S. Gilmore, III, Attorney General of Virginia, Catherine C. Hammond, Deputy Attorney General, J. Steven Sheppard, III, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Fair Woods Homeowners Association ("Fair Woods") maintains a development of residential townhouses in Fairfax County, Virginia. In 1994, the Virginia Department of Transportation ("VDOT") began construction of a partial cloverleaf interchange at the intersection of U.S. Route 50 and the Fairfax County Parkway. This interchange would bring highway traffic within 100 feet of homes in the Fair Woods development.

Fair Woods brought this action in the United States District Court for the District of Columbia against Defendants Federico Pena, in his official capacity as Secretary of the Department of Transportation ("DOT"), Rodney E. Slater, in his official capacity as Administrator of the Federal Highway Administration ("FHWA"), and David R. Gehr, in his official capacity as Commissioner of the VDOT, for declaratory and injunctive relief. Fair Woods sought a declaratory

order that the DOT, FHWA, and VDOT had failed to study the noise impact of the Route 50 interchange and possible noise abatement measures as required by the Federal-Aid Highway Act ("FAHA"), 23 U.S.C. § 109 and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. Fair Woods also sought to enjoin construction of the interchange until the agencies complied with the FAHA and NEPA.

The district court entered a temporary restraining order on September 12, 1994 barring construction of the Route 50 interchange. The court then granted Defendants' motion for change of venue and transferred this matter to the United States District Court for the Eastern District of Virginia. That court dissolved the restraining order after concluding that construction of the Route 50 interchange would not cause Fair Woods irreparable injury since noise barriers could later be installed between the interchange and the development.

After a hearing, the district court granted summary judgment for the DOT and FHWA. The district court also granted VDOT Commissioner Gehr's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). From this order, Fair Woods appeals.

I.

On April 27, 1981 the FHWA and VDOT completed a draft environmental impact statement ("EIS") for the Fairfax County Parkway which proposed six different alignments for the thirty-five mile highway between Reston and Fort Belvoir, Virginia. After several public hearings, the Virginia State Highway and Transportation Commission ("Commission") gave location approval to one of the alignments for the parkway on September 24, 1981. The Commission's approval only specified the location of the parkway and did not address specific design features such as interchanges.

The Fair Woods Homeowners Association was incorporated on October 6, 1983. Fairfax County required the developer of Fair Woods to dedicate thirteen acres for a right of way for the proposed parkway. (J.A. at p. 321 & 358.) At least one Fair Woods resident was aware of the proposed parkway when he bought his house in 1984. (J.A. at p. 449.)

3

The FHWA approved the final EIS for the parkway on May 18, 1984. The EIS indicated that the noise level from the parkway at the Pender United Methodist Church, a location near the Fair Woods development, would be seventy-one decibels which is a noise impact under FHWA regulations. (J.A. at p. 197.) The EIS contained a map which listed all the sites along the parkway where noise barriers were planned to be constructed. The Fair Woods development was not included among the proposed sites.

On July 17, 1987 the Commission's successor, the Virginia Commonwealth Transportation Board, approved the major design features of the parkway including a partial cloverleaf interchange at U.S. Route 50 which borders the Fair Woods development. Construction of the parkway was completed in 1988, but construction of the Route 50 interchange was postponed because of a lack of funding.

In 1993 the VDOT published the list of communities affected by the parkway which would receive noise barriers. (J.A. at p. 417.) The FHWA and VDOT denied Fair Woods's request for noise barriers because they found that the development was not"`planned, designed, and programmed' at the point of public knowledge" which was the date the parkway received location approval in 1981. (J.A. at p. 405.)

On February 5, 1994 the VDOT notified Fair Woods that the agency intended to acquire a portion of the development's land for the interchange. The interchange included two cloverleafs which would bring the parkway within 100 feet of the Fair Woods development. Fair Woods filed this action on September 20, 1994 to halt construction of the interchange.

In response to this litigation, the VDOT conducted a study of the future noise impact of the Route 50 interchange on the Fair Woods development. The VDOT found that the noise levels would range from fifty-seven to seventy-one decibels which is considered a noise impact under FHWA regulations and requires the consideration of abatement measures. 23 C.F.R. part 772, Table 1. The FHWA reevaluated the EIS on the parkway in consideration of the VDOT's noise data and concluded:

> Mitigation is not appropriate in the case of Fair Woods, because the responsibility for noise impacts rested on the

4

> Fairfax County authorities, and the developer, who was fully aware of the Parkway and located Fair Woods with that knowledge. It would not be a proper expenditure of Federal-aid highway funds to provide mitigation of noise impacts for Fair Woods.

(J.A. at p. 470.)

II.

Fair Woods brought this action against the FHWA and VDOT asserting that the agencies had violated the FAHA and NEPA by failing to study the noise impacts and consider noise abatement measures for the Route 50 interchange. The FAHA provides the following, in pertinent part:

> The Secretary . . . shall not approve plans and specifications for any proposed project on any Federal-aid system for which location approval has not been secured unless he determines that such plans and specifications include adequate measures to implement the appropriate noise level standards.

23 U.S.C. § 109(i) (1990). The NEPA requires, inter alia, that all federal agencies prepare a detailed statement of environmental impacts when proposing a major federal action which significantly affects the quality of the human environment. 42 U.S.C. § 4332(C) (1994).

The district court, in its record order, found that Fair Woods's claims under the NEPA were barred by the equitable doctrine of laches. The district court stated:

> I am going to deny [Fair Woods's] motion for summary judgment, grant the defendants' motion because I am satisfied from this record that in 1981, after many years of preliminary planning, there was an adequate point of public knowledge. The community was put on sufficient and ade-

5

quate notice that this particular highway, not only this specific alignment but with specific interchanges, was going in.

(J.A. at p. 508.)

III.

The invocation of the doctrine of laches lies within the sound discretion of the district court and will be reversed only if clearly erroneous. Potter Instrument Co., Inc. v. Storage Technology Corp., 641 F.2d 190, 191 (4th Cir.), cert. denied, 454 U.S. 832 (1981). Laches is an affirmative defense which requires the defendant to prove (1) lack of diligence by the plaintiff and (2) prejudice to the defendant. White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990), cert. denied, 501 U.S. 1260 (1991). Lack of diligence is shown when"`the plaintiff delayed inexcusably or unreasonably in filing suit.'" Id. (quoting National Wildlife Federation v. Burford, 835 F.2d 305, 318 (D.C. Cir. 1987), reh'g denied, 844 F.2d 889 (1988)). An inexcusable or unreasonable delay occurs only after the plaintiff discovers, or with reasonable diligence could have discovered, the facts giving rise to its cause of action. White, 909 F.2d at 102.

The prejudice to the defendant must be a result of the plaintiff's delay in pursuing its claim. Tobacco Workers Int'l Union v. Lorillard Corp., 448 F.2d 949, 958 (4th Cir. 1971). A generalized allegation of harm resulting from the passage of time is not sufficient to show prejudice. Equal Employment Opportunity Comm'n v. Radiator Specialty Co., 610 F.2d 178, 183 (4th Cir. 1979). The defendant, however, "is aided by the inference of prejudice warranted by the plaintiff's delay." Giddens v. Isbrandtsen Co., 355 F.2d 125, 128 (4th Cir. 1966). The greater the plaintiff's delay, the less prejudice required to show laches. White, 909 F.2d at 102.

Although laches is not a favored defense in environmental cases, we find its application appropriate here. See Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel, 872 F.2d 75, 79 (4th Cir. 1989). The record indicates that Fair Woods received clear notice of the proposed cloverleaf interchange when the Virginia Commonwealth Transportation Board gave its final approval for the project on July 17, 1987. (J.A. at p. 256-7.) By this date, Fair Woods was aware that the FHWA

6

and VDOT had decided not to provide noise abatement measures for the development. We find that Fair Woods's delay in filing suit is inexcusable and unreasonable.

Fair Woods contends that its delay in filing suit is justified because construction of the interchange was postponed due to a lack of funding. This action, however, is based upon alleged violations of the FAHA and NEPA by the Defendants which occurred when the Defendants prepared the final EIS in 1984. Therefore, the temporary postponement of construction because of a lack of funding could not affect any interests Fair Woods may have under the FAHA and NEPA and does not excuse its delay in bringing this suit.

Since we find that Fair Woods's delay is inexcusable and unreasonable, Defendants do not have to demonstrate the degree of prejudice required if the delay had been less aggravated. White, 909 F.2d at 103. But cf. Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323, 1330 (4th Cir.), cert. denied, 409 U.S. 1000 (1972) (action to enjoin construction of an interstate is not barred by laches when construction "has not progressed to the point where the costs of altering or abandoning the proposed route would certainly outweigh the benefits that might accrue therefrom to the general public."). The record indicates that Fair Woods had ample opportunity to contest Defendants' decision not to provide the development with noise abatement measures. Fair Woods failed to challenge this decision until after the VDOT executed a construction contract for the interchange. This action prejudices Defendants by requiring the agencies to reexamine the environmental data ten years after the final EIS was released for public inspection and comment.

In addition, "the principles of equity require a federal court to stay its hand when judicial relief makes no sense." White, 909 F.2d at 104. Even if this Court granted the relief Fair Woods seeks, its position would be no different than before it commenced this litigation. Defendants do not dispute that noise from the interchange traffic 100 feet from the Fair Woods development would adversely affect Fair Woods. They simply contend that they are not required to pay to alleviate this problem and Fair Woods has not cited any authority which requires Defendants to pay. Further environmental study, therefore, would be superfluous.

7

We find that Fair Woods's delay in bringing suit was inexcusable and unreasonable and that this delay prejudiced Defendants. Accordingly, we conclude that Fair Woods's action is barred by the doctrine of laches. Therefore, the order of the district court is

AFFIRMED.