LOTTINGER, Judge.
This is a suit by a taxpayer of East Baton Rouge Parish, Louisiana, for a refund of ad valorem taxes paid under protest. Plaintiff contends that the ordinance levying the tax is invalid, null and void in its entirety, or in the alternative, that it is invalid, null and void to the extent that the tax levied exceeds five mills. The defendants, Parish of East Baton Rouge and the Parish Council of the Parish of East Baton Rouge, filed a peremptory exception of prescription under the provisions of Art. 6, § 35(A) La.Const. (1974) and La.R.S. 39:513. The trial court sustained the exception and dismissed plaintiff’s suit. Plaintiff has appealed.
The facts are not in dispute. The Parish Council of the Parish of East Baton Rouge created a consolidated garbage district and called an election to authorize the levying of an ad valorem tax of ten mills upon all property located therein for a period of ten years. On April 3, 1976, a tax election was held in the district on two propositions. Proposition number one levied a five mill tax for garbage collection and disposal services. A second proposition levied an additional five mills for the purpose of paying the cost of a second garbage collection each week. Each proposition received a majority of the votes cast. The election returns were promulgated by the parish council on April 14, 1976, and published in the official journal of the parish on April 19, 1976.
During the latter part of 1976, plaintiff received its notice from the sheriff and ex-officio tax collector showing that a tax in the amount of ten mills had been assessed upon its property located in the consolidated garbage district. On December 29, 1976, plaintiff paid, under protest, that portion of the ad valorem tax levied for 1976 in the garbage district, and on January 17, 1977, filed this suit.
Subsequently, on April 13, 1977, the Parish Council for the Parish of East Baton Rouge adopted Ordinance No. 4996 which levied a tax of 9.18 mills upon all property in the garbage district. Plaintiff followed the same pay under protest procedure and filed a supplemental petition on January 18, 1978, to which the defendant again filed a peremptory exception of prescription.
On appeal the plaintiff alleges the following specifications of error:
“1. The District Court erred in concluding that the provisions of Section 35 of Article 6 of the the 1974 Constitution and L.R.S. 18:1294 are clear and free from ambiguity.
2. The District Court erred in holding that the predecessor provisions of Section 35 of Article 6 of the 1974 Constitution were construed so as to prohibit the institution of suits to contest maintenance tax elections, as well as bond elections.
3. The District Court erred in concluding that the provisions of Section 35 of Article 6 of the 1974 Constitution and L.R.S. 18:1294, as construed by the District Court, do not conflict with the provisions of the Fourteenth Amendment of the U.S. Constitution.
4. The District Court erred in concluding that a taxpayer, paying ad valorem taxes under protest and filing suit for their recovery, as authorized by L.R.S. 47:2110, must bring the action within sixty days of the promulgation of the results of a special maintenance tax election.
5. The District Court erred in sustaining the exception of prescription.”
Initially, we must resolve the apparent conflict between Article 6, § 35(A) La. Const. (1974) and La.R.S. 39:513 providing for a 60 day peremptive period and the 30 day peremptive period provided provided by La.R.S. 47:2110.
The trial judge held Article 6, § 35(A) La.Const. (1974) was applicable and dismissed plaintiff’s suit. Plaintiff argues that by reference to the transcript of the constitutional convention, the intent of the delegates was to limit the application of Article 6, § 35(A) La.Const. (1974) to bonds. It is further argued by plaintiff that since La.R.S. 39:513 is merely a legislative reenactment of Article 6, § 35(A) La.Const. *974 (1974) the same interpretation must apply, and thus, since the election in question did not involve bonds, the only peremptive period applicable is that found in La.R.S. 47:2110.
Conceding arguendo that after studying the constitutional convention debates we were to conclude that Article 6, § 35(A) La.Const. (1974) was only intended to apply to bonds, we do not find that this controls our interpretation of La.R.S. 39:513.
At the time of the election, April 3,1976, and the filing of this suit, January 17, 1977, the applicable law was that enacted by the legislature as Act 18 of 1975, Extraordinary Session.[1] Act 18 repealed Part II of Chapter 4 of Title 39 of the Louisiana Revised Statutes of 1950 and established a uniform procedure for the conduct of elections to authorize the issuance of bonds, the assumption of indebtedness, and imposition or increase of taxes by political subdivisions. Though Act 18 repealed Part II of Chapter 4 of Subtitle II of Title 39, it did not reenact and renumber those repealed sections of Title 39. This, however, was accomplished under the authority of La.R.S. 24:253, and §§ 1 to 14 of Act 18 were designated La.R.S. 39:501 to 514. Thus, we reach the same result as if the legislature in enacting Act 18 had merely amended and reenacted Part II by repealing the then existing language and inserting the Act 18 language with appropriate revised statute section numbers.
In attempting to understand the intent of the legislature in the enactment of La.R.S. 39:513, it is necessary that we look not only to the language of the statute, but also to its relationship with other sections in the same area of the revised statutes.
Title 39 of the Louisiana Revised Statutes is entitled Public Finance. It is subdivided into two subtitles, Subtitle I- — State Finance and Subtitle II — Local Finance. La. R.S. 39:513 is found under Subtitle II, Local Finance, in Chapter 4, Bonded Indebtedness and Special Taxes. Chapter 4 is further subdivided into twelve parts.[2] We note that Chapter 4 does not deal exclusively with bonds or bonded indebtedness, but also authorizes the calling of elections to impose special taxes, and special taxes in aid of specified enterprises. Thus, we must conclude that Part II of Chapter 4 which is entitled Elections, governs any election authorized under Subtitle II, Chapter 4 of Title 39, as well as those statutes making reference to this Part. See La.R.S. 33:8004. This would include elections to authorize the issuance of bonds as well as elections imposing special taxes. Necessarily then the legislature must have intended that La. R.S. 39:513 apply to elections other than bond elections.
Though we have concluded that La.R.S. 39:513 is applicable to tax elections, it still remains for this court to resolve the apparent conflict between La.R.S. 39:513 and La. R.S. 47:2110.
The legislature certainly never intended to provide two separate and distinct per-emptive statutes providing different time periods within which to attack the same tax. Obviously, these statutes were never intended to apply to the same tax; otherwise, havoc would reign and there could be no certainty as to which peremptive period would apply. We, therefore, conclude that La.R.S. 47:2110 was intended to apply to those taxes levied under authority granted the state or political subdivision by the legislature or by the constitution. There is no mention made in La.R.S. 47:2110 of a tax authorized by an election, and thus we find a distinction. Since the tax in this case was authorized by an election, the applicable peremptive period is that provided by La. R.S. 39:513.
*975 Plaintiff argues that it would be in violation of the provisions of the Fourteenth Amendment of the United States Constitution to prohibit a constitutional challenge to the tax authorized. We disagree. In McLavy v. American Legion Housing Corporation, 227 La. 300, 79 So.2d 316 (1955) our Supreme Court held under similar legislation that the validity of the election is conclusively presumed after the 60 day period has expired, and this included constitutional attacks. Indirectly the United States Supreme Court has approved Louisiana’s 60 day peremptive period in Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.
APPENDIX A
Act 18 of 1975, Extraordinary Session provides:
AN ACT
To implement Article VI, Section 22 of the Louisiana Constitution of 1974 to establish a uniform procedure for the conduct of elections to authorize the issuance of bonds, the assumption of indebtedness, and imposition or increase of taxes by political subdivisions as defined herein; and to repeal Part II of Chapter 4 of Title 39 of the Louisiana Revised Statutes of 1950.
Be it enacted by the Legislature of Louisiana: Section 1. Statement of purpose; definitions
The purpose of this Act is to implement Article VI, Section 22 of the Louisiana Constitution of 1974 by establishing a uniform procedure for the conduct of elections to authorize the issuance of bonds, the assumption of indebtedness and the imposition or increase of taxes by political subdivisions. The following provisions relating to the procedure for elections shall apply to and shall supersede those provisions of the Louisiana Constitution of 1921 continued as statutes under the authority of Part II of Article XIV of the Louisiana Constitution of 1974 and existing laws of the state of Louisiana, notwithstanding any contrary provisions contained therein. However, nothing contained in this Act shall repeal the limitations in effect on January 1, 1975, on the authority of political subdivisions to impose or increase taxes.
For purposes of this Act, the term “political subdivision” means state agencies, boards, or commissions, parishes, municipalities, school boards and districts, levee boards and districts, port boards and commissions, port, harbor, terminal and industrial districts, and all special service districts, including but not limited to, road, water, sewerage, fire protection, recreation, gas utility and garbage districts and all other boards, districts or units of local government authorized by law to conduct elections for the issuance of bonds, the levying of any tax or the assumption of indebtedness.
Section 2. Elections
In all cases in which the provisions of the Louisiana Constitution of 1974, as now existing or hereafter amended, or of law, as now existing or hereafter amended or enacted, require the approval of voters at an election in a political subdivision as a prerequisite to the issuance of bonds, levying of any tax, or assumption of indebtedness by said political subdivision, the election shall be held substantially in accordance with the general election laws of the state of Louisiana, except that the election shall be called, conducted, canvassed, promulgated and notice thereof given by the governing authority of the political subdivision in accordance with the procedures hereinafter set forth. The governing authority of the political subdivision may call a special election for any of these purposes at any time, and it shall call an election for any of these purposes when requested to do so by the petition in writing of one-fourth of the electors qualified to vote at an election.
Section 3. Resolution calling election; proposition
The election shall be ordered by a resolution of the governing authority of the political subdivision which shall state the purpose for which it is called.
If the purpose of the election is to authorize the issuance of bonds, the resolution and the proposition submitted to the voters shall state the purpose for which the bonds are to be issued, and, if required by the law pursuant to which the bonds are issued, the maximum amount of the bonds to be issued, the number of years for which the bonds are to run and the maximum rate of interest of the bonds.
If the purpose of the election is to authorize the levy of special tax, the resolution and the proposition submitted to the voters shall state the rate, object, and purpose for which the tax is to be levied and, if it is to be limited as to duration, the number of years it is to run.
If the purpose of the election is to authorize the assumption of indebtedness, the resolution and the proposition submitted to the voters shall state the amount and nature of the debt to be assumed.
Section 4. Notice of Election
Notice of the election shall be given embracing substantially all matters required to be set forth in the resolution ordering the election, and shall further state that the governing authority of the political subdivision ordering the election will, in open session, at the hour and place named, proceed to canvass the returns and declare the result of the election. The notice shall be published once a week for four consecutive weeks in a newspaper of general circulation in the political subdivision; or if there is none, then in a newspaper of general circulation in the parish; or if there is no newspaper of general circulation in the parish, then in a newspaper of general circulation in an adjoining parish. Not less than thirty days nor more than ninety days shall intervene between the date of the first publication and the date of the election.
*976 Section 5. Polling places; election officers
The governing authority of the political subdivision ordering the election shall designate the polling places, provide the voting machines and compiled statement of qualified voters and fix the compensation of the election officers. It shall appoint for each polling place, three commissioners and one clerk of election, all of whom shall be qualified electors. To reduce expenses of holding the election, said governing authority may combine two or more regular voting precincts into a single polling place located at such place as may be designated by the governing authority, provided that notice thereof is given in the publication required by Section 4 of this Act.
Section 6. Election officers; substitutes
If any commissioner or clerk of election is unable, or if he fails or neglects to attend or serve at the polling place designated, at the hour fixed for opening, or within one hour thereafter, the commissioners present shall appoint, or in the absence of all commissioners the voters present shall elect the necessary number of commissioners and clerks, who shall have the same powers, compensation and duties as other commissioners and clerks and shall serve in the place and stead of the absentee or delinquent appointees.
Section 7. Election officers; oaths
Commissioners and clerks of elections, before opening the polls, shall be sworn to perform all the duties incumbent on them as such, the oath to be taken before any officer authorized to administer oaths, or by the clerk, and each commissioner before any other commissioner. The commissioners of election may administer any oath and receive any affidavit provided for in this Act.
Section 8. Penalty for violations
The commissioners and clerks of elections held under the provisions of this Act shall have the same powers and duties in conducting the elections and in preserving order at the polls as are conferred and imposed upon similar officers under the general election laws of this state. Whatever is declared in the general election laws to be a felony, other crime , or misdemeanor, shall be the same for any election held under the provisions of this Act and shall be punished in the same manner.
Any willful failure or neglect to comply with the requirements of this Act or any willful violation of any officer, agent or employee of any political subdivision availing itself of the provisions of this Act shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars or by imprisonment not exceeding one year, with or without hard labor, or by both fine and imprisonment.
Section 9. Qualification of voters
All qualified electors of the political subdivision shall be entitled to vote in an election on the issuance of bonds, levying of a tax or assumption of indebtedness by the political subdivision and such bonds may be issued, such tax levied or indebtedness assumed if approved by a vote of a majority in number of the qualified electors voting on the proposition at such election as is provided in this Act. No voter shall be required to sign a ballot or vote assessed valuation of property.
The registrar of voters shall furnish to the election commissioners appointed to hold the election the precinct register for each precinct or polling place. No defect or irregularity in or omission from the register so furnished shall affect the validity of the election unless it be established that the voters were thereby deprived of votes sufficient in number to have changed the result of the election.
Section 10. Voting
Voting machines shall be used and the general election laws of this state shall govern the conduct of the voting, except as otherwise provided herein.
Section 11. Canvass of returns
On the date and at the hour and place named in the notice of election, the governing authority ordering the election shall in public session examine and canvass the returns, and declare the result of the election. The result shall be promulgated by one publication in a newspaper of general circulation in the political subdivision, or if there is none, in a newspaper of general circulation in the parish, or if there is no newspaper of general circulation in the parish, then in a newspaper of general circulation in an adjoining parish.
Section 12. Proces verbal
The governing authority ordering the election shall preserve a proces verbal of the canvass and shall forward a copy to the secretary of state, who shall record it; another copy shall be forwarded to the clerk of the district court, who shall record it in the mortgage records; and the remaining copy shall be retained in the archives of the office of the governing authority ordering the election.
Section 13. Contests
For sixty days after promulgation of the results of an election held under this Act to incur debt, issue bonds, levy a tax or assume debt, any person in interest may contest the legality of the election, the bond issue provided for, the tax authorized or the assumption of indebtedness for any cause. After that time, no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond authorization, for any cause whatsoever. If the validity of any election, tax, debt assumption, or bond issue authorized or provided for is not raised within the sixty days, the authority to incur or assume debt, levy the tax, or issue the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have authority to inquire into such matters.
Section 14. Special election to increase interest rate
Any parish, municipality or other political subdivision of the State of Louisiana in which a special election has been held, at which election the issuance of bonds of said political subdivision has been approved and a maximum rate of interest to be borne by said bonds has been established, may through the respective governing authority thereof, call and hold a special election to authorize the issuance and sale of such bonds at a maximum rate of interest greater than that rate *977 specified in the proposition or propositions previously approved. However, such greater maximum rate of interest so submitted for approval shall not exceed the maximum rate of interest then permitted by the applicable laws of the State of Louisiana for that type of bonds described in the aforesaid proposition or propositions.
Any election called and held hereunder shall be held and conducted under the same legal authority under which the previous election was held and conducted unless such laws have since been amended, in which event said election shall be held and conducted in accordance with the laws of the State of Louisiana then in effect with respect to the holding and conducting of special elections to authorize the issuance of such bonds. Any election held and conducted hereunder shall have no effect other than to permit the issuance and sale of said bonds at a maximum rate of interest greater than that approved at said previously held election.
Notwithstanding any provision of this act to the contrary, the authority to issue any bonds approved in prior bond elections shall remain in full force and effect.
Section 15. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided by Article III, Section 18 of the constitution.
Section 16. Severability
If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
Section 17. Repeal
All laws or parts of laws in conflict herewith, particularly the provisions of Part II of Chapter IV of Title 39 of the Louisiana Revised Statutes of 1950, are hereby repealed.

. For full text of Act 18 of 1975, Extraordinary Session, see Appendix A of this opinion.

. Part I: General Provisions, Part II: Elections, Part III: Bonded Indebtedness, Part IV: Special Taxes, Part V: Borrowing in Anticipation of Tax Collections, Part VI: Special Taxes in Aid of Specified Enterprises, Part VII: Federal Loans, Part VIII: State Control of Local Indebtedness, Part IX: Registry of Bonds, Part X: Participating Certificates, Part XI: Lost, Destroyed or Cancelled Bonds, and Part XII: Bonds to Acquire Plant Sites.