KUHN, J.
li>We granted certiorari in response to the writ application filed by Capital Area Transit System (CATS), challenging the overruling peremptory exceptions raising objections of prescription, peremption, no cause of action and no right of action based *28 on the trial court’s conclusion that the sixty-day limitation period for contesting the legality of a tax authorized by an election [1] held on April 21, 2012, is inapplicable to the claims of unconstitutionality asserted by plaintiffs, Gregory Milton Graugnard and William L. Smith, Jr. Because we hold that the sixty-day period provided in La. R.S. 18:1294 applies to plaintiffs’ claims, we grant the writ, reverse the denial of the peremptory exceptions, sustain the exceptions, and dismiss the lawsuit with prejudice.[2]

BACKGROUND

CATS is authorized to impose a tax on any subject of taxation within the territorial area of East Baton Rouge Parish or any local governmental subdivision or subdivisions located wholly within any of the municipalities located wholly within the boundaries of East Baton Rouge Parish for any transit-related purpose whatsoever, provided that the proposed tax is approved by a majority of voters voting on the proposition within the affected local governmental subdivisions at an election held in accordance with the Louisiana Election Code. Accordingly, CATS is authorized to call a tax election parish wide or within the limits of any municipality that is wholly located within the boundaries of East Baton Rouge Parish.
On April 21, 2012, CATS exercised its statutory authority and held special elections in the cities of Baton Rouge, Baker, and Zachary to levy an ad valorem tax (the Tax) within those cities. At that time, it is undisputed that CATS provided 1P,transit services within these three cities as well as in the unincorporated areas of East Baton Rouge Parish. However, because CATS did not call a parish-wide election, the registered voters that reside within the unincorporated areas of East Baton Rouge Parish were unable to participate in the April 21, 2012 election.
The purpose of the Tax was to improve the availability and quality of public transportation within the named cities. Proposed improvements included decreases in wait times, more efficient routes, and better signage and shelters. The Tax was also to provide funds for the operations and maintenance of transit services in East Baton Rouge Parish and for capital improvements and acquisitions, including the acquisition of immovable property. The cities of Baton Rouge and Baker passed the Tax.
Graugnard and Smith filed this suit challenging the validity of the Tax on equal protection grounds under both the federal and state constitutions.[3] According to the allegations of their petition, Graugnard lives within the municipal boundaries of Baton Rouge. Smith, who lives in the unincorporated area of East Baton Rouge Parish, owns taxable property within the city of Baton Rouge. The gist of plaintiffs’ assertions is that individuals who reside outside of the cities of Baton Rouge and Baker, but own property inside those cities, were denied the right to vote in the Tax elections. Additionally, they maintain that individuals who pay the ad valorem taxes on property owned inside those cities suffer an equal protection violation because the proceeds of the Tax will be spent *29 outside of the municipal limits for the benefit of individuals and businesses that do not have to pay the Tax. They aver their claim’s’ also set forth a cause of action under the 28 U.S.C. § 1988, which provides an enforcement action for federal constitutional and | ^statutory rights. Plaintiffs request a declaration that the Tax is invalid as a violation of their federal and state constitutional equal protection rights.[4]
CATS filed several exceptions, including peremptory exceptions urging objections of prescription, peremption, no cause of action and no right of action. CATS claimed that because the parties stipulated that plaintiffs had not filed their suit within sixty days, CATS was entitled to a dismissal of the suit under La. R.S. 18:1294.[5]
On October 29, 2012, the trial court sustained certain portions of the exceptions that effectively dismissed plaintiffs’ Baker Tax claims. Thus, only plaintiffs’ Baton Rouge Tax claims remained viable.[6] The trial court determined plaintiffs’ claims were outside the scope of La. R.S. 18:1294, finding that Louisiana constitutional and statutory law does not “fix” a prescriptive or peremptive period for federal constitutional claims asserted in a Louisiana state court. Judgment overruling the peremptory exceptions was signed on November 13, 2012. CATS applied for a supervisory writ.

DISCUSSION

Louisiana law provides the limitation period for plaintiffs’ federal constitutional claims and § 1983 action
The trial court concluded that Louisiana constitutional and statutory laws do not “fix” a prescriptive or peremptive period for federal constitutional claims asserted in state court. We disagree.
42 USC § 1983 provides a civil remedy for the deprivation of federally created rights, but it does not provide a limitation period for asserting the action.[7] *30 When Congress has not established a time-limitation period for a federal cause of action, the settled practice is to adopt the appropriate state limitation period as federal law if the state law is not inconsistent with federal law or policy. See Owens v. Okure, 488 U.S. 235, 239, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989); Wilson v. Garcia, 471 U.S. 261, 271-79, 105 S.Ct. 1938, 1943-48, 85 L.Ed.2d 254 (1985); see also 42 U.S.C. § 1988(a).[8] Accordingly, to the extent it is not inconsistent with federal law or policy, Louisiana law provides the limitation period for plaintiffs’ federal constitutional claims.
The U.S. Supreme Court’s decision in Wilson provides the correct starting point for analyzing what Louisiana limitation period applies to plaintiffs’ § 1983 |fiequal protection claims. In practice, § 1983 tends to encompass numerous and diverse topics. Prior to Wilson, the U.S. Supreme Court instructed federal courts to select the forum state’s statute of limitations that was “most analogous” and “most appropriate” to the particular action, so long as the chosen limitations period was consistent with federal law and policy. See Owens, 488 U.S. at 239, 109 S.Ct. at 576. But there were inherent problems with this approach, since the particular facts of each claim could almost always be analogized to fit within one or more legal theories with different limitation periods arising within the state. See Wilson, 471 U.S. at 272-75, 105 S.Ct. at 1944-46.
In Wilson, the U.S. Supreme Court set about the task of establishing a single rule for determining the appropriate limitation period for a § 1983 remedy based on a broad characterization of all § 1983 claims. Noting that characterizing § 1983 actions for limitation purposes was a federal question, the Wilson court found that a broad characterization furthered federal interests of uniformity, certainty, and judicial economy in federal civil rights litigation. After considering the historical catalyst for Congress’ enactment of the Civil Rights Act of 1871, the Wilson court found that the type of atrocities Congress sought to remedy when it enacted § 1983 plainly sounded in tort. For purposes of statutory time limits, the Wilson court concluded that § 1983 actions are best characterized as tort claims involving personal injuries. Thus, as a general rule, the limitation period applicable to § 1983 actions is the state statute of limitation for personal injury actions. See Wilson, 471 U.S. at, 268-79, 105 S.Ct. at 1944-48.
Under the broad rule articulated in Wilson, Louisiana’s one-year liberative prescription for delictual actions, set forth in La. C.C. art. 3492, provides the 17limitation period for § 1983 actions Since Wilson was decided, federal and state courts have applied the forum state’s general personal injury statutory limitation period to actions involving such conduct as police brutality, unlawful arrest, and seizure of property without advance notice or sufficient opportunity to be heard. See Owens, 488 *31 U.S. 235, 109 S.Ct. 573; Daley v. U.S. Dist. Court, 383 Fed.Appx. 178, 179 (3d Cir.2010); Webster v. City of Amarillo, 68 F.3d 464 (5th Cir.1995). But the issue before us now is whether the Wilson rule is appropriate in a constitutional challenge of the validity of a state tax, which appears to be res nova.
Undoubtedly, Wilson sets out compelling federal principles and policies that support a broad characterization of § 1983 actions as personal injury actions for limitation purposes. However, we believe that in suits that attempt to challenge the validity of a state tax, federal principles of comity and noninterference in state fiscal matters call for federal restraint when state law provides a remedy that adequately protects federal rights. See Nat’l Private Truck Council, Inc. v. Oklahoma Tax Comm’n, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); Fair Assessment in Real Estate Ass’n Inc. v. McNary, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981).
These federal principles and policies are typically discussed in the context of whether a federal court should restrain the collection of a state tax. The Tax Injunction Act, set forth in 28 U.S.C. § 1341 enacted in 1937, is a statutory manifestation of the federal policy of noninterference and federal restraint when there is an adequate state remedy to protect the federal rights asserted. See Fair Assessment, 454 U.S. at 116, 102 S.Ct. at 186. This federal policy of noninterference in state fiscal matters is a longstanding one. Notably, U.S. Supreme Court decisions in cases seeking federal court equitable relief against state taxation were decided before and after the enactment of the 1871 Civil Rights Act. Fair Assessment, 454 U.S. at 109-16,102 S.Ct. at 182-86.
IsFor example, in 1870, the U.S. Supreme Court underscored the importance of this policy, noting:
It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collection the taxes, may derange the operations of government, and thereby cause serious detriment to the public.
Dows v. City of Chicago, 78 U.S. 108, 110, 11 Wall. 108, 20 L.Ed. 65 (1870).
The reasons that support federal noninterference with state tax administration — such as dependency of state budgets on receipt of local tax revenues and the havoc that would result if federal injunc-tive relief against collection of state or local taxes were widely available — are just as compelling today as they were when the Tax Injunction Act was passed. See Rosewell v. LaSalle Nat’l Bank, 450 U.S. 503, 527, 101 S.Ct. 1221, 1236, 67 L.Ed.2d 464 (1981). Thus, the principle of comity bars taxpayers’ damages actions brought in federal courts under 42 U.S.C. § 1983. Fair Assessment, 454 U.S. at 116, 102 S.Ct. at 186.
In Nat’l Private Truck Council, the U.S. Supreme Court considered the federal policy of noninterference, as articulated in Fair Assessment, in federal constitutional challenges to state tax laws brought in state court. In determining whether Congress had authorized state courts to issue injunctive and declaratory relief in state tax cases, the U.S. Supreme Court interpreted § 1983 in light of the strong principle against federal interference with state taxation. Given this principle, the U.S. *32 Supreme Court held that § 1983 does not call for either federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists. Nat’l Private Truck Council, 515 U.S. at 589-90, 115 S.Ct. at 2355-56.
19Thus, in tax assessment cases, the U.S. Supreme Court has concluded that Congress did not intend for § 1983 to provide a remedy for federal challenges to state tax systems, whether in federal or state court, when a state provides a plain, adequate, and complete remedy. See General Motors Corp. v. City of Linden, 143 N.J. 336, 671 A.2d 560 (1996), cert, denied, 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996).
While Fair Assessment and Nat’l Private Truck Council involved § 1983 actions challenging the validity of a tax in tax assessment cases, we find the underlying federal policies articulated in those cases apply with equal force to a § 1983 action challenging the validity of a tax levied by a tax election. These federal principles are no less compelling today than they were when Wilson was decided. Thus, while we find that Louisiana law provides the applicable limitation period for plaintiffs’ federal and state constitutional challenges to the Tax, we find that Louisiana’s statute of limitations for personal injury actions does not apply.
Plaintiffs’ claims fall within the type of challenges that are subject to the sixty-day limitation period provided in La. R.S. 18:1294
In granting certiorari, the parties were ordered to brief the issue of what period of limitation applies to a § 1983 federal constitutional equal protection claim challenging the validity of a state ad valorem tax and tax election brought in a Louisiana district court. CATS asserts that the sixty-day period provided in La. R.S. 18:1294, with its underpinnings founded in the Louisiana State Constitution, provides the correct limitation period for all of plaintiffs’ constitutional claims and causes of action.
Article VI, § 35(A) of the Louisiana Constitution, provides:
For sixty days after promulgation of the result of an election held to incur or assume debt, issue bonds, or levy a tax, any person in interest may contest the legality of the election, the bond issue provided for, or the tax authorized, for any cause. After that time no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond [ ^authorization, for any cause whatsoever. If the validity of any election, tax, debt assumption, or bond issue authorized or provided for is not raised within the sixty days, the authority to incur or assume debt, levy the tax, or issue the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have authority to inquire into such matters.
And in conjunction its constitutional source provision, La. R.S. 18:1294, which is part of Louisiana’s comprehensive election code, similarly provides:
For sixty days after promulgation of the results of an election held under this Chapter to incur debt, issue bonds, levy or increase a tax or assume debt, any person in interest may contest the legality of the election, the bond issue provided for, the tax authorized, or the assumption of indebtedness for any cause. After that time no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond authorization, for any cause whatsoever. If the validity of any election, tax, debt as *33 sumption, or bond issue authorized or provided for is not raised within the sixty days, the authority to incur or assume debt, levy the tax, or issue the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have authority to inquire into such matters.
We hold that these provisions clearly encompass the claims asserted in the instant petition. The statutory language is broad enough to include “any cause” for contesting the legality of the election and tax authorized. The obvious intent of these provisions to include all challenges— no matter the legal theory — is further demonstrated with the language concerning the effect of not challenging the validity of the election or tax within the sixty-day period. The provisions state that after sixty days, “no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond authorization, for any cause whatsoever,” that “the authority to ... levy the tax ... shall be conclusively presumed to be valid,” and that “no court shall have the authority to inquire” into the validity of the election or tax authorized by the election. See La. Const, art. VI, § 35(A) and La. R.S. 18:1294. It is difficult to envision how the citizens of this state in enacting their constitution or the Louisiana legislature could have more clearly articulated the intent to provide that |nif the validity of a tax authorized by an election is not challenged within the sixty-day period,' it is too late no matter the cause.
Plaintiffs’ contention that La. R.S. 18:1294 only applies when the election authorizes a bond or other assumption of state debt or a tax associated with a bond and that because the April 21, 2012, tax election did not involve authorizing bonds or other state debt, La. R.S. 18:1294 has no applicability to their claims has already been addressed. Examining former La. R.S. 39:513, the predecessor to La. R.S. 18:1294, this court held that the sixty-day period applied to tax elections even when no bond is at issue. Audubon Ins. Co. v. Parish of East Baton Rouge, 366 So.2d 972 (La.App. 1st Cir.1978).
As to what Louisiana limitation period applies to their federal constitutional claims, plaintiffs take the untenable position that Louisiana’s payment under protest statute, set forth in La. R.S. 47:2134, is the only state remedy in which they could challenge the legality of the Tax.
La. R.S. 47:2134 provides a taxpayer with a remedy to maintain a legality challenge to the amount or the enforcement of an ad valorem tax, when the taxpayer timely pays the disputed amount and provides notice of his intent to file suit for the recovery of the protested tax. The statute requires the suit to be filed within thirty days from the date of the protested payment. See La. R.S. 47:2134(0(2).
The Louisiana Supreme Court has determined that the predecessor to La. R.S. 47:2134, former La. R.S. 47:2110, sets forth the proper method by which payment of an ad valorem tax may be resisted when the tax is not authorized by an election. Therefore, La. R.S. 47:2134 applies only when the tax is imposed by Louisiana’s constitution or legislature. Allied Chemical Corp. v. Iberville Parish Police Jury, 426 So.2d 1336, 1339 (La.1983).
112The trial court erred in interpreting the applicability of La. R.S. 18:1294 as limited to only those instances where the constitutionality of the enabling statute setting forth the tax authority’s power to *34 call the election is challenged.[9] Certainly, contesting the validity of the election and tax based on a federal or state constitutional challenge to the enabling statute is encompassed by the broad language of La. R.S. 18:1294. See Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (per curiam). But the trial court’s conclusion limiting the application of La. R.S. 18:1294 to that narrow instance was error.
La. R.S. 18:1294 provides an adequate remedy to protect plaintiffs’ federal and state constitutional rights
 We also conclude that the remedy provided in La. R.S. 18:1294 adequately protects the federal rights plaintiffs assert in their suit. Federal courts consider a state remedy to be “adequate” when it provides plain, speedy, and efficient means to redress the alleged violation of federal rights in courts and affords plaintiffs with a complete judicial determination of the federal constitutional claims asserted that can be ultimately reviewed by the U.S. Supreme Court. See Fair Assessment, 454 U.S. at 116, 102 S.Ct. at 186; accord Nat’l Private Truck Council, 515 U.S. 582, 115 S.Ct. 2351; see also La. R.S. 28 U.S.C. § 1341.
La. R.S. 18:1294 is part of Louisiana’s comprehensive election code, which is integral in Louisiana’s overall and extensive finance, revenue, tax administration, and municipal taxation scheme. Although La. R.S. 18:1294 requires challenges to the validity of a tax to be brought within sixty days of the promulgation of the election results, that time limitation period adequately protects the federal rights at issue. Louisiana’s Election Code requires the publication of the notice of election, which includes a statement of the purpose for which the tax is to be levied, “once a week for four consecutive weeks” and “[n]ot less than 11sforty-five days nor more than ninety days shall intervene between the date of the first publication and the date of the election.” La. R.S. 18:1284 & 1285. Thus, the public was first apprised of the provisions of the Tax, which plaintiffs contend offends the federal and state constitutions, at least forty-five days before the April 21, 2012 elections. La. R.S. 18:1294 also complies with the federal policy concerning speedy access to state court. The statute provides direct access to court and an opportunity for a complete judicial determination of federal constitutional issues as long as the suit is brought within the sixty-day limitation period. And that decision is subject to appellate review in the Louisiana courts and the U.S. Supreme Court. See 28 U.S.C. § 1257; La. Const, art. V, § 5(F).
Plaintiffs urge that statutes setting forth abbreviated state limitation periods, such as those provided by the Louisiana Election Code and Louisiana’s payment under protest statute, even if asserted in state court are contrary to the underlying federal purposes of enacting § 1983 and, therefore, run afoul of and are preempted by the Supremacy Clause. See U.S. Const, art. VI, cl. 2. In that same vein, plaintiffs maintain that even if La. R.S. 18:1294 bars their state constitutional claims, their § 1983 civil rights action cannot be so severely limited by a sixty-day peremptive period, citing two U.S. Supreme Court cases where the state limitation periods were determined to be too restrictive to adequately protect the federal right asserted.
In Burnett v. Grattan, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), the U.S. *35 Supreme Court found that Maryland’s six-month limitation period for filing employment discrimination complaints for administrative resolution did not provide the appropriate state statute of limitations for an action brought by state college employees alleging racial/sex based employment discrimination. In Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), a Wisconsin notice-of-claim statute, which provided that no action may be brought or 114maintained against any state governmental subdivision, agency, or officer unless the claimant provided written notice of the claim within 120 days of the alleged injury, was held to conflict with the remedial objections of federal civil rights law and, therefore, was preempted by federal law. But plaintiffs’ reliance on these federal cases is misplaced because these cases are clearly factually distinguishable from the instant case. Neither Burnett nor Felder involved a state tax suit or a federal constitutional challenge to the validity of a tax; thus, the underlying concerns of federal restraint and noninterference in state fiscal matters and tax administration were not at issue. As such, the cases are inapposite.
A shortened limitation period in suits challenging the validity of a state tax is consistent with federal policies and its interest in providing certainty, efficiency, and quick resolution of matters involving funding public projects with revenue from taxes approved by a majority of the electorate. If federal constitutional challenges to the validity of state tax and bond elections were regulated by the one-year prescriptive period Louisiana provides for delictual actions, the effect would be chilling on the ability of local governments to finance vital local services such as transit systems.
The Louisiana Supreme Court and this court have applied the shortened limitation periods provided by Louisiana’s constitution and statutory laws in actions asserting federal or state constitutional challenges to bonds and taxes authorized by election; the validity of issue of a bond; and taxes levied under authority of Louisiana’s legislature or constitution. See Naquin v. Lafayette City Parish Consol. Gov’t, 2006-2227 (La.2/22/07), 950 So.2d 657, 669 (provisions of bond referendum were conclusively presumed valid after expiration of sixty-day peremptive period); Andrieux v. East Baton Rouge Parish Sch. Bd., 254 La. 819, 227 So.2d 370, 370-371 (1969) (suit challenging constitutionality in a bond and tax election could not be maintained where it was filed more than 60 days after results lifiof election were promulgated); McLavy v. American Legion Housing Corp., 227 La. 300, 79 So.2d 316, 320 (1955) (where time within which to attack validity of sewerage system bond issue and the accompanying sewerage charge had run, validity of election and bond issue authorized was conclusively presumed and taxpayers could not thereafter attack the constitutionality of bond issue in declaratory judgment action); Redmon v. Sub-Sewerage Dist. No. 1 of Sewerage District No. 1, Parish of Jefferson, 226 La. 245, 75 So.2d 854 (1954) (state constitutional subsection limiting time within which to contest legality of a sub-sewerage bond issue was applicable to all cases including those in which the constitutionality or legality of the statutes or ordinances were attacked); Rankin v. East Baton Rouge Parish Sch. Bd., 233 So.2d 573, 577 (La.App. 1st Cir.1970) (per curiam) (sixty-day prescriptive period for contesting legality of bond elections applied to suit challenging the legality of bond elections as violating federal and state constitutional rights). See also Cipriano, 395 U.S. at 706-07, 89 S.Ct. at *36 1900-01.[10] Accordingly, we conclude that La. R.S. 18:1294 provides an adequate remedy for plaintiffs’ federal and state constitutional claims.
| irDECREE
Because plaintiffs did not file their suit within the sixty-day period required by La. R.S. 18:1294, it is untimely. The trial court erred in ruling to the contrary. Therefore, the writ is granted. That portion of the judgment overruling CATS’ peremptory exceptions raising the objections of peremption, prescription, no cause of action, and no right of action is reversed, and judgment is rendered in favor of CATS, sustaining the peremptory exceptions and dismissing plaintiffs’ suit with prejudice.
WRIT GRANTED. DENIAL OF PEREMPTORY EXCEPTIONS REVERSED AND JUDGMENT RENDERED, SUSTAINING PEREMPTORY EXCEPTIONS AND DISMISSING SUIT WITH PREJUDICE.

. See La. R.S. 18:1294 of the Louisiana Election Code.

. Although CATS alternatively challenged the trial court's overruling of a dilatory exception raising the objection of prematurity, in light of our ruling, that issue is moot.

.Although the petition for declaratory judgment and a permanent injunction was originally filed only by Graugnard, it was subsequently amended to add Smith as an additional plaintiff.

. Plaintiffs also requested permanent injunctions, enjoining the assessment or collection of the Tax and the issuance by CATS of any certificates of indebtedness, bond, or other form of debt to be paid by future Tax revenues.

. CATS also filed a peremptory exception objecting on the basis of the non-joinder of a party and dilatory exceptions objecting on the basis of vagueness, ambiguity, and nonconformity of the petition. In conjunction with the peremptory exceptions, CATS moved to strike specific equal protections claims urged by the plaintiffs.

. The trial court sustained CATS' peremptory exceptions raising objections of no right of action as well as a motion to strike as to plaintiffs’ Baton Rouge and Baker disenfranchisement and equal protection claims. Pursuant to plaintiffs' stipulation that they were not seeking to enjoin issuance of the certificate of indebtedness purchased by Regions Bank, the trial court also sustained CATS’ exceptions raising objections of no cause of action and its motion to strike issuance of an injunction enjoining CATS from issuing any certificate of indebtedness, bond, or other form of debt. Likewise, pursuant to plaintiffs’ stipulation that they were not seeking in-junctive relief applicable to the offices of the East Baton Rouge Parish Assessor or Sheriff, the trial court overruled CATS’ exception objecting on the basis of non-joinder as moot. Lastly, CATS’ withdrawal of its dilatory exceptions objecting on the basis of vagueness, ambiguity, and nonconformity of the petitions was noted in the judgment under review. None of these rulings are before us.

.42 U.S.C. § 1983 states:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the *30 Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer’s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia

. The U.S. Supreme Court concluded that Congress has implicitly endorsed this “borrowing” approach with respect to claims enforceable under the Reconstruction Civil Rights Acts in 42 U.S.C. § 1988. See Wilson, 471 U.S. at 267-68, 105 S.Ct. at 1942.

. See La. R.S. 48:1460(12) (giving CATS the power to impose a tax on any subject of taxation within the territorial area of participating parishes for any transit-related purpose whatsoever, except as otherwise prohibited).

. In Cipriano, the U.S. Supreme Court found that the provision in a Louisiana statute authorizing only property owners to vote in a bond election was unconstitutional. However, the Supreme Court did not void the election because the challenge was not brought within the sixty-day limitation period provided in former La. R.S. 39:513, the predecessor to La. R.S. 18:1294.